STATE OF FLORIDA *ex rel.* W. H. ELLIS, AS ATTORNEY GENERAL, RELATOR, v. ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, RESPONDENT.

1. When matters of inducement stated in an alternative writ of mandamus are replied to, they should be either admitted, denied or confessed and avoided. Immaterial, irrelevant or argumentative matter should not be included in an answer to an alternative writ of mandamus.

2. A demurrer goes to a pleading as a whole for insufficiency; while a motion to strike is under the statute applicable where the pleading either as a whole or any part of it is so framed as to prejudice or embarrass or delay a fair trial.

3. If the answer to an alternative writ of mandamus is wholly insufficient as a pleading, a demurrer will lie. If the

answer is wholly irrelevant and impedes a fair trial of the cause, it may be stricken on motion; and any irrelevant, immaterial or otherwise improper matters stated in the answer may be stricken on motion.

4.  When the answer contains positive denials and other averments that are responsive to the material allegations of an alternative writ of mandamus, a motion to strike the entire answer will not be granted; but immaterial, irrelevant, argumentative or otherwise improper matter contained in the answer will be stricken on proper motion.

This case was decided by the Court En Banc.

This is a case of Original Jurisdiction.

## STATEMENT.

The second amended alternative writ of mandamus filed in this cause is as follows:

"The State of Florida to the Atlantic Coast Line Railroad Company.

Permission of the court being first had and obtained upon application of the relator in the above stated cause, it was ordered that the amended alternative writ hereinbefore issued herein be and the same is hereby amended so as to read as follows: Whereas, by a petition filed in this court in the name of the State of Florida upon the relation of W. H. Ellis, as attorney general of said state, it has been made to appear:

1st.    That the Atlantic Coast Line Railroad Company is a railroad corporation, doing business under the laws of the state of Florida, in this state, and is in possession of, controls and pretends to operate certain lines of railroad lying wholly in the state of Florida, to wit: a

line of railroad from Palatka in Putnam county to Rochelle in Alachua county, thence to Ocala in Marion county, thence to Leesburg in Lake county and to Brooksville in Hernando county; and from Croom in Hernando county to St. Petersburg in Hillsborough county, and from Bartow in Polk county to Punta Gorda in De Soto county; also a line of railroad from Ocala in Marion county via Dunnellon in said county to Gulf Junction in Citrus county, and from thence to Homosassa in said county, and from Gulf Junction in Citrus county to Croom in Hernando county, and from Trilby in Pasco county to Bartown in Polk county.

2nd. That the line of railroad aforesaid from Palatka to Rochelle, thence to Ocala, thence to Leesburg and Brooksville, and from Bartow to Punta Gorda, was constructed and built under and by virtue of a charter granted by the state of Florida to the Gainesville, Ocala and Charlotte Harbor Railroad Company, to which said railroad company the state of Florida, by chapter 3167 of the laws of 1879, approved March 4th, 1879, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, two million, six hundred and twenty-two thousand three hundred and sixty-two and forty-five one-hundredths (2,622,362.45) acres of land.

3rd. That the line of railroad aforesaid beginning at Ocala in Marion county and running via Dunnellon and Gulf Junction to Homosassa in Citrus county, and from Gulf Junction to Inverness in said county was constructed and built under and by virtue of a charter granted by the

state of Florida to the Silver Springs, Ocala & Gulf Railroad Company, to which said railroad company the state of Florida, by chapter 3170 of the laws of 1879, approved March 12th, 1879, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, three hundred and thirty-nine thousand eight hundred and seven and fourteen one-hundredths (339,807.14) acres of land.

4th. That the line of railroad aforesaid from Inverness in Citrus county to Croom in Hernando county, and thence to Trilby in Pasco county, and thence to Bartow in Polk county, was constructed and built under and by virtue of a charter granted by the state of Florida to the South Florida Railroad Company, to which said railroad company the state of Florida, by chapter 3491 of the laws of 1883, approved March 5th, 1883, granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad corporation received from the state of Florida, pursuant to said land grant, sixty-five thousand one hundred and ninety-two and seven one-hundredths (65,192.07) acres of land.

5th. That the line of railroad aforesaid from Trilby in Pasco county to St. Petersburg in Hillsbsorough county was constructed and built under and by virtue of a charter granted by the state of Florida to the Orange Belt Railroad Company, to which said railroad company the state of Florida granted large donations of land belonging to the state of Florida, to aid in the construction of the lines of railroad of said corporation. The said railroad cor-

poration received from the state of Florida, pursuant
to said land grant, eighty-eight thousand six hundred and
eighty-seven and ninety-two one-hundredths (88,687.92)
acres of land.

6th.  That afterwards, by various purchases, trans-
fers, mergers and consolidations the said Atlantic Coast
Line Railroad Company acquired all the franchises, prop-
erties and lines of railroad as hereinbefore described, of the
said railroad companies, and came into the actual posses-
sion thereof, and is now pretending to operate said lines
of railroad as a common carrier, and thereby became and
was obligated to the state of Florida to maintain and oper-
ate said lines of railroad as a common carrier and faith-
fully to perform the public trust imposed upon and ac-
cepted by it, that is to say: The said Atlantic Coast Line
Railroad Company, by reason of the foregoing facts, is, and
since October 1st, 1905, has been, obligated unto the state
of Florida to accept and receive, transport and deliver,
with reasonable safety and dispatch, all freight offered
to it along said lines of railroad, proper to be trans-
ported by a common carrier in this state, and to furnish
ample facilities for transporting the same in the manner
aforesaid, at the reasonable tariff and charges adopted
by said corporation and then in force, and to transport
with reasonable safety and dispatch all passengers over
said main lines of railroad, and to provide reasonably
safe and convenient facilities therefor, and to that end
to maintain and keep its roadbed and track in a reason-
ably safe and suitable condition and repair; but the state
of Florida, by the said W. H. Ellis, as attorney general
of said state, avers and informs your honors that the
said Atlantic Coast Line Railroad Company, through its

officers, agents, employees and servants, has, since the first day of October, A. D. 1905, failed and is now failing in the performance of its said public duty along and over the main lines of railroad as above described, and to perform the public trust conferred upon it as aforesaid and accepted by it as above set forth, to the wrong, injury and great inconvenience of the public; that is to say:

7th. The said Atlantic Coast Line Railroad Company has carelessly and negligently, and in violation of its duty to the state and the public, since the first day of October, A. D. 1905, failed and is failing to keep and maintain its roadbed and track in good repair, and in fit and suitable condition for the proper transportation of freight and passengers over its said main lines of railroad and the safe movement of its equipment thereon; that it has allowed from the date aforesaid, and is allowing, its roadbed and track to run down, deteriorate, and become unfit and unsuitable for the proper movement of its equipment thereon and the transportation of freight and passengers thereover; that the said roadbed and tracks on said main line, in their present condition, are and constitute a danger and a menace to the lives and limbs of the passengers on said railroad and the freight transported thereover; that said roadbed has an uneven and irregular surface; a large percentage of the crossties under the rails are rotten and wholly incapable of supporting the rails with the weight of an empty car thereon. At divers places along the said main lines of railroad and for great distances, the iron spikes which are driven into the crossties to support the rails can be lifted from the crossties with the naked hand; that many of the angle-bars or plates on main lines, and bolts

used in the same, are broken, and that in many cases the angle plates are not fastened to the rails with the requisite number of bolts. And that on account of the unsafe and dangerous and bad condition of the roadbed and track as aforesaid, numerous casualties have recently occurred upon said main lines of railroad, resulting in the destruction of and injury to human life, and great damage to property. The state of Florida, by W. H. Ellis, attorney general, shows unto your honors that in order to place the said main lines of railroad in a fit and suitable condition to enable the said Atlantic Coast Line Railroad Company to faithfully and properly perform its public trust and the duties devolving upon it, as aforesaid, it is necessary to put and maintain its roadbed and track along its said main lines in a reasonably safe and suitable condition reasonably adequate to meet the requirements of the public service it has undertaken to perform, by replacing all decayed crossties with sound ones of such material and of such dimensions as will be reasonably adequate to the demands of the public service to be performed on such roadbed and track, and by replacing and properly securing all defective, broken and missing angle bars or rail connections with sound ones, and by adequately spiking its rails to its crossties, and by putting the surface of its roadbed along said mentioned main lines in a reasonably safe and adequate state of evenness and smoothness.

But the said Atlantic Coast Line Railroad Company has failed since the first day of October, A. D. 1905, and is failing to maintain and keep its said roadbed and track along its said main lines of railroad in suitable and fit condition for the transportation of freight and passen-

gers thereover, by failing to put and maintain its roadbed and track along its said main lines in a reasonably safe and suitable condition reasonably adequate to meet the requirements of the public service it has undertaken to perform, by failing to replace all decayed crossties with sound ones of such material and of such dimensions as will be reasonably adequate to the demands of the public service to be performed on such roadbed and track, and by failing to replace and properly secure all defective, broken and missing angle bars or rail connections with sound ones, and by failing to adequately spike its rails to its crossties, and by failing to put the surface of its roadbed along said mentioned main lines in a reasonably safe and adequate state of evenness and smoothness.

8th. All of which failures and omissions on the part of the said Atlantic Coast Line Railroad Company to perform and discharge its duties and obligations to the said state of Florida, as aforesaid, has resulted, and is resulting, in great confusion, inconvenience, hindrances, delays and injury to the public generally in the state of Florida.

9th. That the state of Florida, by W. H. Ellis, as attorney general of said state, further shows unto and informs your honors that the people of the state of Florida are entirely without remedy in the premises unless it be afforded by the interposition of this honorable court, through a writ of mandamus.

Now, therefore, we, being willing that full and speedy justice be done in the premises, do command you, the Atlantic Coast Line Railroad Company, to forthwith repair and put in reasonably safe and suitable condition and maintain the same in such condition, your roadbed

and track over and along the main lines of railroad from Palatka in Putnam county to Rochelle in Alachua county, thence to Ocala in Marion county, thence to Leesburg in Lake county, and to Brooksville in Hernando county; and from Croom in Hernando county to St. Petersburg in Hillsbsorough county, and from Bartow in Polk county to Punta Gorda in De Soto county, and from Ocala in Marion county via Dunnellon in said county to Gulf Junction in Citrus county, and from thence to Homosassa in said county, and from Gulf Junction in Citrus county to Croom in Hernando county, and from Trilby in Pasco county to Bartow in Polk county, by putting and maintaining your roadbed and track along said main lines in a reasonably safe and suitable condition reasonably adequate to meet the requirements of the public service you have undertaken to perform, by replacing all decayed crossties with sound ones of such material and of such dimensions as will be reasonably adequate to the demands of the public service to be performed on such roadbed and track, and by replacing and properly securing all defective, broken and missing angle bars or rail connections with sound ones, and by adequately spiking the rails to the crossties, and by putting the surface of the roadbed along your said mentioned main lines in a reasonably safe and adequate state of evenness and smoothness, or that you appear before the justices of our supreme court sitting within and for the state of Florida, at the court room in the city of Tallahassee, on the 29th day of January, A. D. 1907, at ten o'clock a. m. of said day, and show cause why you refuse to do so, and have you then and there this writ.

Witnesss, the Honorable THOMAS M. SHACKLEFORD,

Chief Justice of the Supreme Court of the State of Florida, and the seal of the said court at Tallahassee, the capital, this 11th day of January, A. D. 1907.

(Seal)                     M. H. MABRY,
                Clerk Supreme Court State of Florida."

The respondent presented the following answer, which was sworn to: "Now comes the Atlantic Coast Line Railroad Company, respondent in the above entitled cause, and answering the amended alternative writ of mandamus, for answer says:

1. Respondent admits it is in possession and control of the lines of railroad mentioned in the first paragraph of the said amended alternative writ; that it is operating the same and not merely pretending so to do.

2. It admits that the line of railroad from Palatka to Rochelle,. thence to Ocala, thence to Leesburg and then to Bartow, and from thence to Punta Gorda, was constructed and built under and by virtue of a charter granted by the state of Florida to the Gainesville Ocala & Charlotte Harbor Railroad Company. (Answering that portion of said second paragraph beginning with the words 'to which' down to end of the said paragraph, it says that it has no personal knowledge of said allegations, and it contends that the same are immaterial, if true.)

3. Answering the third paragraph of the said amended alternative writ of mandamus, it admits that the line of railroad beginning at Ocala and running via Dunnellon and Gulf Junction to Homosassa, and from Gulf Junction to Inverness, was constructed and built by virtue of a charter granted by the state of Florida to the Silver Springs, Ocala & Gulf Railroad Company. (And answer-

ing said paragraph from the words 'to which' down to the end of the said paragraph, it says that it has no personal knowledge as to the allegations therein contained, and it contends that same are immaterial, if true.)

4. Answering the fourth paragraph of the said amended alternative writ of mandamus, it says that all the line of railroad from Inverness to Croom was built under and by virtue of a charter of the South Florida Railroad Company, and that the said line of railroad from Croom to Bartow was built under a charter granted by the state of Florida to the Gainesville, Ocala and Charlotte Harbor Railroad Company, whose name was subsequently changed to the Florida Southern Railway Company. (And further answering said fourth paragraph from the words 'to which' down to the end of the said paragraph, it says that it has no personal knowledge of such allegations, and same are immaterial, if true.)

5. In answer to the fifth paragraph of the said amended alternative writ of mandamus, it admits that the line of railroad from Trilby to St. Petersburg was built under and by virtue of a charter granted by the state of Florida to the Orange Belt Railroad Company. (And further answering said paragraph five from the words 'to which' down to the end of the said paragraph, it says that it has no personal knowledge of said allegations, and same are immaterial, if true.)

6. In answer to the sixth paragraph of the said amended alternative writ of mandamus, this respondent says that it is true that by various purchases, transfers, mergers and consolidations the Atlantic Coast Line Railroad Company acquired all the franchises and lines of rail-

46—S C

road hereinbefore described, together with the right of way, depots, station improvements and rolling stock thereof (but the said Atlantic Coast Line Railroad Company denies that it received from any of the railroads above mentioned any part or portion of the lands granted, if any such were granted to them by the state of Florida). Further answering the said paragraph, this respondent admits that by virtue of the operating of the said several lines of railroad aforesaid, it was and is obligated to the state of Florida to keep and maintain a suitable and reasonably safe roadbed and track along the main line of railroad hereinbefore mentioned. And this respondent further answering says, that it has at all times since the 1st of October, A. D. 1905, up to the present time, maintained and kept a safe roadbed along the main lines of the railroads hereinbefore mentioned, and avers that it is now keeping and maintaining a suitable and safe roadbed and track along the main lines of said railroads above mentioned. [This respondent, further answering said paragraphs, denies that its officers, agents, employees and servants have at any time from the 1st of October, A. D. 1905, up to and inclusive of this time of the filing of this answer, failed to keep and maintain a safe and suitable roadbed and track along the main lines of said railroads in said writ mentioned.]

7. Answering the seventh paragraph of the said amended alternative writ of mandamus, this respondent denies that at any time between the 1st day of October, A. D. 1905, up to the time of the filing of this answer, it has failed to maintain and keep its roadbed and track in good repair and in fit and suitable condition for the transportation of freight and passengers over its said lines of

railroad and for the safe movement of its equipment thereon. Respondent further denies that at any time between the dates aforesaid it has allowed its roadbed and track over the lines or railroad mentioned to run down or deteriorate so as to become unfit or unsuitable for the proper movement of its equipment and the transportation of freight and passengers thereover; on the contrary, this respondent says that all times between the said dates mentioned it has kept and maintained the roadbed and tracks over the lines above mentioned in a safe and suitable condition for the movement of its trains, and for the carrying of passengers and freight thereover; and that at all times during the time aforesaid, the said roadbed and track has been in a suitable and safe condition for carrying the character and volume of traffic, both passenger and freight, offered to it for transportation.

Respondent denies that the said roadbed and track in their present condition are and constitute a danger and menace to the lives, limbs and health of the passengers of said railroads and the freight transported thereover. This respondent denies that there has been any accident or casualty since October 1st, A. D. 1905, which resulted in the killing of any person or the destruction of any freight which was due to the failure of the said respondent to maintain its roadbed and track in a safe and suitable condition. [Respondent admits that casualties have occurred since the first of October, A. D. 1905, on the lines mentioned in the amended alternative writ, just as casualties have occurred within that period upon many railroad lines operating in the United States; but denies that said casualties are attributable to or caused by the negligence of the respondent in the maintenance of its track

and roadbed in a reasonably safe and suitable condition; and avers that casualties have occurred from a failure of employees to observe well established rules of the company for their guidance and protection, and against which it is impossible for this respondent to provide, or any court to prevent by command.]   [(Respondent admits that there is on portions of the lines mentioned in said amended alternative writ an uneven and occasionally an irregular track, but says that same is not attributable to negligence in the maintenance thereof, but is a natural condition arising from the operation of trains over the track and is an incident of all tracks, no matter how well laid, and that even in sections where rock is obtainable for ballast, uneven and irregular surfaces of track obtain, but denies that said irregular or uneven surfaces renders its track unsafe in any respect, or makes it unsuitable for handling freight or passenger traffic over it.  Respondent here avers that it is not within its power to maintain a perfectly even and regular track surface, and that no such condition obtains on any railroad within its knowledge, nor is it necessary that such condition should exist to insure safety in operation and a minimum liability to accidents.  Respondent says that upon being subjected to any proper test of regularity and evenness, its track surface will be found to conform to any reasonable measure ordinarily used in the construction and operation of railroads that could be supplied and as being much beyond the standard required for safety.)]

[(This respondent further answering says that it may be true that here and there in the many miles of track in the railroads mentioned, there are decayed crossties, as in the very nature of things a ratio of about one-fifth of

VOL. 53, JANUARY TERM, 1907.        725

State ex rel. Ellis v. A. C. L. R. R. Co.—Statement of Case.

the crossties in all railroad tracks in the state of Florida decay each year. But respondent says that at no point along the lines of railroad mentioned are any proportion of the crossties under said rails decayed to such an extent as to render said track or roadbed unsafe for the purpose of transporting freight and passengers.]

(This respondent further answering says that it is daily engaged in replacing any and all ties in its railroad that have become unsuitable or decayed; that its own interest to operate a safe track would compel it to look out for decayed and rotten ties and replace the same, since, should a condition of danger or unsuitability arise to the operation of its trains, respondent would be the greatest financial sufferer thereby.) Respondent further denies that for great distances along the lines of road mentioned that the iron spikes which are driven into the crossties to support the rails may be lifted from the crossties with the naked hand, (and that if any such condition exists on its line of road, it is in only some extremely isolated case which could not affect the safety of the track). [(This respondent admits that it is possible that at a few points on the lines of road above mentioned that some of the angle-bars of plates, or the bolts fastening the same, may be broken, but such a condition arises from natural causes and could not be prevented by the greatest foresight, and the same is common to and is incident to all railroad operations. But this respondent denies that there are any appreciable number of angle bars or plates or bolts on its lines of road mentioned in the said amended alternative writ broken, and certainly not such a number thereof as to in any way render its track and roadbed

unsafe for the transportation of passengers and freight moving over it.)]

(Respondent avers that it has ever been vigilant and watchful to detect such breakage when it occurs, and with due respect to this honorable court, no order or mandate it made could increase the vigilance exercised by respondent in that behalf. This respondent further answering says, that when the angle bars in its line of road were put in they were fastened to the rails with the full number of bolts required, to wit: from four to six, according to the length and design of the angle bar; and while in the nature of things these bolts do break, this respondent has exercised due diligence in all cases to discover where same is broken and has at once replaced them.)

(This respondent further answering says, that in the construction of its lines of road mentioned in the said amended alternative writ, it has placed under the rails two thousand eight hundred and sixteen (2816) cross-ties of suitable material and of the following dimensions, viz.: eight and one-half feet long, seven inches thick and nine inches wide, to every mile; and that it did fasten the ends of the said rails together with unbroken and complete joints by joining the ends of said rails with two angle-bars or fish plates, and from four to six bolts and nuts to each joint according to the design of the plate, and by fastening each rail along its railroad to the crossties thereunder by two spikes driven into each crosstie and fastening the rails to said ties; and it is with due diligence keeping its said roadbed and track in the same condition in which it was laid. This respondent further says that while it is true that it has established the standard of

construction above mentioned and has ever sought to keep and maintain the same, yet it is not essential to the safety of its track and roadbed for the movement of passengers and freights that said high standard of efficiency should absolutely be kept up. This respondent further says that it is practically impossible at all times to keep all portions of its track in a state of efficiency as above set forth from causes natural and above the control of this respondent.)

(Respondent further avers that in the portion of the lines of railroad in Florida belonging to it, it has sought to maintain the same, not only in a safe and suitable condition for traffic, but to operate the same for the comfort and convenience of its patrons; that the tremendous growth, industrial and otherwise, in the state of Florida, has made labor difficult to obtain; that the negro labor has been receiving advanced prices, the effect of which has been to decrease their efficiency and working hours, and even though respondent has from time to time been increasing the wages of employees needed to maintain the condition of its track, it has at times during the time aforesaid found itself unable to secure that quantity of labor it has desired to utilize in the maintenance of its track; that even now with the rate of wages offered higher than has ever been offered for this class of labor respondent, at times, finds itself with an inadequate supply of said labor, and although respondent has not brought about this condition and has diligently sought to meet and overcome it, it cannot be charged with a violation of its duty to the public because of occasional deficiencies in the standard of its track and the maintenance thereof.)

(Respondent denies that any of the operating difficulties herein mentioned have brought about any such condition of

its roadbed and track as are alleged in the petition for the amended alternative writ now being answered; on the contrary,) it avers that prior to and since October 1st, 1905, and now the tracks mentioned and complained of have always been in a safe condition for the suitable transportation of passengers and freight thereover.

8. This respondent further answering denies each and every allegation of the eighth paragraph of the amended alternative writ.

The attorney general filed a motion to strike the answer or to require the respondent to amend the answer upon grounds that: (1) the answer is so framed as to prejudice, embarrass and delay a fair trial of the action; (2) the answer is so framed that the relator cannot join issue on the same; (3) the matters of the answer are so pleaded in such manner that there are admissions and denials of the same matters contained therein, and such admissions and denials are so interwoven as to embarrass the trial of the cause; (4) that the matters stated in the answer and included within the parentheses and brackets shown above are wholly irrelevant, tender no issue of fact, constitute no matter of defense, are argumentative, not responsive to the writ, seek to introduce new matter and tend to delay and embarrass a fair trial of the cause.

*W. H. Ellis,* Attorney General, for Relator.

*W. E. Kay, Jno. E. Hartridge, R. A. Burford* and *Sparkman & Carter,* for Respondent.

WHITFIELD, J.: The alternative writ alleges that the respondent has allowed and is allowing its roadbed and track to run down, deteriorate and become unfit and un-

State ex rel. Ellis v. A. C. L. R. R. Co.—Opinion of Court.

suitable for the proper movement of its equipment thereon
and the transportation of freight and passengers there-
over; that the said roadbed and tracks on said main line,
in their present condition, are and constitute a danger and
a menace to the lives and limbs of the passengers on said
railroad, and the freight transported thereover; that said
roadbed has an uneven and irregular surface; a large per-
c ntage of the crossties under the rails are rotten and
wholly incapable of supporting the rails with the weight
of an empty car thereon, at divers places along the said
main lines of railroad and for great distances, the iron
spikes which are driven into the crossties to support the
rails can be lifted from the crossties with the naked hand;
that many of the angle bars or plates on the main lines,
and bolts used in the same are broken, and that in many
cases the angle plates are not fastened to the rails with
the requisite number of bolts.

Upon the last motion to quash the alternative writ in
this cause the court held that "when a reasonably suitable,
safe and sufficient roadbed and track and accompanying
appurtenances are furnished and maintained so as to meet
the reasonably just requirements of the public service, the
law in that regard is satisfied;" and required an amend-
ment to the writ "so that it shall generally require the re-
spondent to put and maintain its roadbed and track along
its main lines in a reasonably safe and suitable condition
reasonably adequate to meet the requirements of the public
service it has undertaken to perform, by replacing all
decayed crossties with sound ones of such material and
of such dimensions as will be reasonably adequate to the
demands of the public service to be performed on such
roadbed and track, and by replacing and properly securing

all defective, broken and missing angle bars or rail connections with sound ones, and by adequately spiking its rails to its crossties, and by putting the surface of its roadbed along said mentioned main lines in a reasonably safe and adequate state of evenness and smoothness."

The second amended alternative writ requires, and it is proper that it should require, the replacing of all decayed crossties with sound ones, and the replacing and properly securing all defective, broken and missing angle bars or rail connections with sound ones, and the doing of other things commanded, to the extent of putting and maintaining the roadbed and track in a reasonably suitable and safe condition to meet the just requirements of the public service. The command of the writ should be construed as designed to accomplish this end.

Matters of inducement stated in the writ, when replied to by the respondent, should be either admitted, denied or confessed and avoided. Immaterial, irrelevant or argumentative matter should not be included in an answer to an alternative writ of mandamus.

It was argued at the bar for the respondent that demurrer is the proper remedy for the relator to invoke in testing the propriety of the answer on the grounds stated in the motion to strike.

If the answer to an alternative writ of mandamus is responsive to the allegations of the writ, but is wholly insufficient as a pleading, a demurrer will lie. If the answer is wholly irrelevant or improper, and impedes a fair trial of the cause, it may be stricken on motion; and any irrelevant, immaterial or otherwise improper matters stated in an answer may be stricken on motion. A demurrer goes to the pleading as a whole for insufficiency; while a mo-

tion to strike is applicable where the pleading as a whole or any part of it is irrelevant or improper and impedes a fair trial. See section 1433 Gen. Stats. of 1906; State *ex rel.* v. Saxon, 25 Fla. 342, 5 South. Rep. 801; Wefel v. Stillman (Ala.), 44 South. Rep. 203.

The answer in this case contains positive denials and other averments that are responsive to the material allegations of the alternative writ; therefore the motion to strike the entire answer is not well taken.

The motion to strike portions of the answer points out matters contained in the answer that are not responsive to the allegations of the alternative writ. Some of such matters are irrelevant, others are argumentative or otherwise infringe the rules of pleading.

On the motion to quash the first amended alternative writ in this cause and to strike portions of the writ, it was held that the allegations of the writ as to lands granted by the state to the several companies which were merged into the respondent company are not wholly irrelevant to the duties and obligations of the respondent involved here, and that, consequently, such allegations would not be stricken. The averments contained in the second, third, fourth and fifth paragraphs of the answer that the respondent "has no personal knowledge of said allegations, and same are immaterial if true," are not responsive to allegations of the writ held to be not wholly irrelevant, and seek to raise a question of materiality of allegations of the writ, which question was disposed of on the former motion.

The denial in the sixth paragraph of the answer that the respsondent received from any of the constituent companies any part or portions of the lands granted is coupled

with the expression, "if any such were granted to them by the state of Florida." The denial is thus made a portion of an averment which refers to but neither admits nor denies an allegation of the writ as to land grants to the constituent companies.

Inasmuch as the attorney general in the oral argument upon this motion insisted that the writ does not charge that the respondent itself received any of the land grants mentioned, and no real effort has been made in the return to deny that the subsidiary companies did receive land grants, we see no useful purpose to be subserved by permitting an amendment on this point, and it will no longer be treated as an issue in the cause.

The denial appearing in brackets in the latter part of the sixth paragraph of the answer, that the officers, agents, employees and servants of the respondent have, since October 1st, 1905, failed to keep and maintain a suitable roadbed and track along the main lines of the railroad mentioned in the writ, is responsive to an allegation of the writ.

The averments contained in brackets in the seventh paragraph of the answer include matters that are immaterial or argumentative, but some portions thereof are responsive to the allegations of the writ.

Though not precisely stated these averments admit that casualties have occurred, but deny that they were attributable to or caused by the negligence of the respondent in the maintenance of its track and roadbed in a reasonably safe and suitable condition; admit that there is on portions of the lines an uneven and occasionally an irregu'ar track, but says it is not attributable to negligence in the maintenance thereof; avers that at no point along

the lines of railroad are any proportion of the crossties under said rails decayed to such an extent as to render said track or roadbed unsafe for the purpose of transporting freight and passengers; denies that there are any appreciable number of angle bars or plates or bolts on its lines of road broken, and certainly not such a number thereof to in any way render its track and roadbed unsafe. These averments are responsive to allegations of the writ.

The averments contained in parentheses as they appear in the writ are not responsive to the allegations of the alternative writ. Some of the averments are argumentative or irrelevant and immaterial, while others assert matters relating to the duties of the respondent not proper in an answer and not in accord with the previous decisions of this court in this cause.

All the averments contained within parentheses as appears by the answer as given in the statement to this opinion are stricken.

As the answer contains sufficient averments responsive to the material allegations of the alternative writ, and as it is proper that the disposition of this cause should not be further delayed, any joinder of issue made by the relator will be confined to the issues tendered by the responsive and material averments of the answer, and the parties will proceed to the presentation of testimony upon material issues.

The motion to strike the entire answer to the alternative writ is denied. The motion to strike portions of the answer is granted in the particulars indicated in this opinion. The relator is allowed five days to join issue, where-

upon appropriate orders will be made for taking testimony.

SHACKLEFORD, C. J., TAYLOR, COCKRELL, HOCKER and PARKHILL, JJ., concur.