SOUTHERN HOME INSURANCE COMPANY, A CORPORA-
TION, *Plaintiff in Error,* v. J. A. PUTNAL, *Defendant
in Error.*

57   199,
58   156,
f58   232,
f58   276
58   278
58   279
58   344
59   63
f59   301
f59   328
d59   374
59   379
59   385
f60   102
f60   176
60   435
f60   454
f60   456

1. There is a clear distinction in the functions performed by a
motion to strike out a pleading and a demurrer thereto, and
this distinction should be observed. They cannot be used inter-
changeably and indiscriminately employed, as they are gov-
erned by essentially different rules of procedure.

2. A demurrer goes to the pleading as an entirety for insufficiency;
while a motion to strike out is applicable where the pleading
either as an entirety or in part is wholly irrelevant or for any
reason improper.

3. A pleading may be stricken out if it is wholly irrelevant to the
cause, or if it violates a rule or order of court, or if it be a pal-
pable attempt to impose upon or trifle with the court, as by
merely repeating or reiterating to no better effect the same
matter which has already been presented and adjudged with no
additions of new matter.

4. Striking out a pleading is a delicate matter and a severe rem-
edy which should be resorted to only in cases clearly requiring
it for the proper and orderly administration of justice.

5. A pleading in proper form, duly authenticated and filed, should
not be stricken out for insufficiency. Its sufficiency as a plead-
ing should be tested by demurrer or by a motion for the com-
pulsory reformation thereof.

6. A plea that is only wanting in explicitness or fullness should
not be stricken out on motion. In such a case the proper method
of attack is by demurrer or a motion for compulsory reforma-
tion. When a good defense is defectively stated it should not
be stricken out on motion.

7. If a plea is so faulty and defective as to be wholly bad and to
constitute practically no defense, or clearly tends to confuse the
issue, as the case may be, so that the court would be warranted
in striking out such plea of its own motion, no reversible error
would be committed in  sustaining a demurrer thereto, even
though the proper method of attack would be by motion. It

may constitute reversible error, however, to strike out a plea which apparently contains a meritorious defense, even though the same be indefinitely pleaded and wanting in certainty.

8. Some pleadings may be infected with such vices as to be open to attack either by a motion to strike out or by demurrer.

9. There is a difference between a motion to strike out a pleading and a motion for the compulsory reformation thereof. However, whether either of such motions is made under the statute, the court is expressly authorized to make a proper order respecting the pleadings; and this may be done even though the motion be not entirely appropriate in its terms.

10. If it is clearly and affirmatively made to appear that the party whose pleading has been improperly stricken out was not injured or harmed thereby in any way and was not prevented from submitting his case to the jury under such a state of pleadings as to give him all the benefit he would have had if such pleading had not been so stricken out, while such ruling would constitute technical error it would not work a reversal of the judgment but would be held to be harmless error. However, where no such showing is made to the appellate court, such ruling may constitute reversible error, on the principle that error having clearly been made to appear, injury must be presumed.

11. An appellate court will not reverse a judgment, however erroneously an isolated point may have been ruled by the court below, when it is clearly made to appear that the party complaining thereof was in no degree injured by such improper ruling.

12. Every presumption is in favor of the correctness of the ruling of the trial court, and an appellate court, in case of doubt, should resolve such doubt in favor of the trial court.

13. Where there is no bill of exceptions incorporated in the transcript of the record, and neither the evidence adduced or the charges and instructions given at the trial is brought before an appellate court, not having the entire record before it to resort to, such court is precluded from saying, when an erroneous ruling upon the pleadings is clearly made to appear, that from a consideration of the whole case such error is harmless.

14. The granting or denial of a motion for the compulsory amend-

ment of a pleading, based on the statute, is a matter resting within the sound judicial discretion of the trial court and the ruling thereon will not be disturbed by an appellate court, unless it is plainly made to appear that there has been an abuse of such discretion, but this principle is not applicable to the granting of a motion striking out a pleading.

15. In an action upon an insurance policy which contains a provision that "this entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject matter thereof, whether before or after a loss," it is error to strike out on motion a plea setting up as a defense to such action false swearing by the plaintiff after the loss in certain specified details or particulars as to the keeping of certain whiskeys and intoxicating liquors in such insured building for the unlawful purpose of selling intoxicating liquors.

16. All parties litigant who are *sui juris,* including insurance companies and persons having property insured as well as others, in the eyes of the law, before the court, stand upon an equal footing, entitled to equal rights and protection, and none to special privileges. All parties are free to make whatever contracts they please, so long as no fraud or deception is practiced and the contract is legal in all respects.

17. Where a party voluntarily accepts a fire insurance policy from an insurance company, no fraud or deception being practiced, in an action brought upon such policy the insurance company may base its defense to such action upon the failure of the insured to comply with any of the provisions of such policy, provided the same are lawful.

18. Where a defendant files a joint and several demurrer to each and every of several replications, he is entitled to the same right and benefit as though he had filed a separate demurrer to every one of such replications and an assignment based upon an order overruling such demurrer will be held good if any one of such replications is found to be bad. Such a course of proced-

ure, economizing both time and space as it does, is to be commended, rather than condemned.

19. Where a party brings before an appellate court for review by writ of error a judgment which has been rendered against him and the other party conceives that any errors which may have been committed, and upon which the plaintiff in error relies for a reversal of the judgment, were harmless, or not sufficient to work a reversal, he should avail himself of the privilege or right conferred by Special Rule 1 of the "Special Rules to be observed in the preparation of bills of exceptions and transcripts of the record," adopted March 2, 1905, and amended June 12, 1905, found on page 19 of such rules, prefixed to 51 Fla., and page X prefixed to 37 South. Rep., and have the evidence and such other proceedings at the trial as he conceived advisable or necessary, properly incorporated in the transcript and brought before the appellate court, so that such court may be in a position to determine from a consideration of the whole case that such errors were in fact harmless. When the defendant in error fails to do this, he is in no position to complain of the application of the long established principle that injury will be presumed when error is made to appear.

20. A requirement in a policy of fire insurance that the insured shall submit to an examination under oath touching the matters relating to the risk assumed by the company and the destruction of the property insured is binding and valid, and a refusal to comply with this condition will preclude the insured from recovering upon the policy, where it provides that no suit can be sustained until after a compliance with such condition.

21. Every pleading is to be most strictly construed against the pleader thereof. It is the first essential of good pleading that it be characterized by certainty, and this quality is especially requisite in a replication.

22. In an action upon a fire insurance policy, a replication to a plea which attempts to set up a waiver by the insurance company of certain provisions in the policy which such plea avers have not been complied with and which were conditions precedent to the right of insured to bring an action upon the policy, should be clear, direct and certain in its allegations as to the facts or acts constituting such waiver.

This case was decided by Division A.

Writ of Error to the Circuit Court for Taylor County.

## STATEMENT.

The defendant in error, hereinafter called the plaintiff, brought an action at law against the plaintiff in error, hereinafter called the defendant, on a fire insurance policy. The declaration substantially follows the statutory form in actions of this nature, and a copy of the insurance policy upon which the action is based is attached thereto.

Five pleas were filed by the defendant to the declaration as follows:

"The defendant, Southern Home Insurance Company, a corporation under the laws of the State of Florida, by its attorneys for pleas to the declaration, says that said policy declared on among other agreements contains the requirements that the insured, meaning the plaintiff, shall submit to examinations under oath by any person named by this company, and yet after said fire and straightway after the plaintiff in the month of June A. D. 1908, submitted to this defendant what he called proofs of loss this defendant demanded in writing of the plaintiff that the plaintiff submit to an examination under oath in the matter of the plaintiff's said claim of loss and in that behalf named L. W. Blanton, as the person to examine the plaintiff, said Blanton then and there residing and being in the town of Perry where said loss occurred and where the plaintiff resided, but the plaintiff refused to submit to the examination, all occurring long before this suit was instituted, and the plaintiff never complied with said provision of said policy, and

that the said policy contains another provision to the effect that no suit or action on said policy for the recovery of any claim shall be sustainable in any court of law until after full compliance by the plaintiff with all the foregoing requirements, including the said requirement with which the plaintiff did not comply as aforesaid.

2. And for a second plea, this defendant says, that said policy declared on among other matters contained a certain provision styled the 'Iron Safe Clause' which clause by this reference to the policy filed with the declaration is made a part hereof, but plaintiff, therein called the assured did not comply with said 'Iron Safe Clause' in this that said fire occurred at night and not when the building was actually open for business, that after said fire this defendant demanded to see the books and inventories called for by said Iron Safe Clause, and that either the plaintiff did not keep such set of books or else they were not kept in an iron safe or in some place not exposed to a fire which would destroy said building, and such set of books, so required to be kept, were not produced for the inspection of the defendant.

3. And for a third plea, the defendant says, the said policy declared on contains among other matters a provision to the effect that said policy shall be void in case of any fraud or false swearing by the plaintiff touching any matter relating to the insurance or the subject matter thereof, whether before or after the loss, and there was fraud or false swearing by the plaintiff after said loss touching the subject matter of the insurance in this that the plaintiff submitted to the defendant a statement sworn to by the plaintiff whereby it was set forth that certain merchandise was in said store covered by said policy and was destroyed by said fire; but so it was,

that such merchandise had not been in said store and was not destroyed by said fire.

4. And for a fourth plea, the defendant says, the said policy declared on contains among other matters a provision to the effect that said policy shall be void in case of any fraud or false swearing by the plaintiff touching any matter relating to the insurance or the subject matter thereof, whether before or after the loss, and there was fraud or false swearing by the plaintiff after said loss touching the subject matter of the insurance in this that the plaintiff submitted to the defendant a statement sworn to by the plaintiff whereby it was set forth in effect that said property, whereof particulars were submitted with said sworn statement, was being used at the time of said fire for conducting such a mercantile business as is covered by said policy, to-wit, dry goods, notions, hardware and groceries, and further that certain whiskeys and intoxicating liquors were received and kept in small quantities in said building for private use only and not for sale, but, so it was, at and before the time of said fire the plaintiff had a retail liquor license from the United States Government for such liquor business at said store, and said liquor was not so kept for private use only, and said plaintiff demanded payment of the defendant on account of said liquors, placing the value in said sworn statement of a large amount of such liquors, as destroyed by said fire in said store and covered by said policy, the value thereof being so stated at a large sum, to-wit: $337.00.

5. And for a fifth plea, this defendant says, that said policy among other matters sets forth in effect that the entire policy, unless otherwise provided by agreement indorsed thereon or added thereto shall be void if the hazard be increased by any means within the control or knowledge of the plaintiff; and so it was, the haz-

ard was increased by means within the control of the plaintiff, to-wit, by an intoxicating liquor business being carried on in said store by said plaintiff contrary to the criminal laws of Florida, and there was no agreement with reference thereto indorsed on or added to said policy."

A demurrer was interposed to all these pleas, which was sustained as to the third and fourth and over-ruled as to the first, second and fifth pleas. The defendant then filed the following amended pleas:

"The defendant Southern Home Insurance Company, a corporation, by its attorneys L. W. Blanton and Cockrell & Cockrell, for its amended pleas to the declaration, and to each count thereof severally says,

And for a third amended plea the defendant says, the said policy declared on contains among other matters a provision to the effect that said policy shall be void in case of any fraud by the plaintiff touching any matter relating to the insurance or the subject matter thereof whether before or after the loss, and there was fraud by the plaintiff after said loss touching the subject matter of the insurance in this, that the paintiff submitted to the defendant a statement sworn to by the plaintiff whereby it was set forth in effect that he had a stock of merchandise in said store at the time of said fire, that the same was wholly destroyed by fire, that the cash value thereof is shown on his balance sheet attached, and said statement includes invoices as so covered by said policy, to-wit, from Consolidated Grocery Company, from Perry Grocery Company, from Logan & Company, and from Tennessee Mill Company, but the fact is that said certain merchandise was never in said store at or prior to said fire, and was not destroyed by said fire; and plaintiff knowingly and wilfully submitted to de-

fendant said false statement with the intent to defraud the defendant.

And for a fourth amended plea the defendant says, the policy declared on contains among other matters a provision to the effect that said policy shall be void in case of any false swearing by the plaintiff touching any matter relating to the insurance or the subject matter thereof, whether before or after the loss, and there was false swearing by the plaintiff after said loss touching the subject matter of the insurance in this, thåt the plaintiff submitted to the defendant as a basis of his claim upon this defendant under said policy a statement sworn to by the plaintiff whereby it was set forth in effect that certain whiskeys and intoxicating liquors were received and kept in small quantities in said building for private use only and not for sale; but so it was, during the period of time covered by said policy prior to said fire the plaintiff used the premises for the unlawful purpose of selling intoxicating liquors, and the plaintiff knowingly and wilfully swore falsely as aforesaid with the intent to defraud the defendant.

The plaintiff interposed the following motion to strike the fourth amended plea:

"Now comes plaintiff by Thos. B. Adams his attorney, and moves the court to strike defendant's 4th amended plea upon the following grounds, to-wit:

1.   Because said plea presents no defense to plaintiff's cause of action.

2.   Because said plea tenders an immaterial issue, to-wit the alleged keeping by plaintiff, of intoxicating liquors for sale.

3.   Because a false statement about such immaterial fact as the sale of liquor does not avoid the policy.

4.   Because said plea tends to embarrass the fair trial of said cause."

This motion was granted.    The defendant also filed the following additional pleas:

"And for a third additional plea, the defendant says the policy declared on contains a provision to the effect that the entire policy shall be void in case of any false swearing by the insured touching any matter relating to the insurance or the subject thereof, whether before or after a loss, and the defendant further says that said policy became and was void before this action in this that — after said fire and prior to this action, to-wit, on or about the first of June, A. D. 1908, the plaintiff delivered to the defendant a sworn statement, purporting to be proofs of loss under said policy, and plaintiff demanded of the defendant the total inventory of $500 under said policy, and said statement was subscribed and sworn to by the plaintiff under date May 30th, 1908, before a notary public in said county, and in and by said statement the plaintiff set forth certain items of goods as covered by said policy of insurance received by the plaintiff from December 28th, 1907, to March 11th, 1908, and among other of said items were two as follows, to-wit: 'Crigler & Crigler, Covington, Ky., $57.-00,' and Chas. Blum & Co. Jacksonville, Fla., $280.00,' of which two items there were annexed as exhibits what purported to be copies of invoices from said parties thus named, and the plaintiff falsely swore, in and by said statement, so sworn to by him as aforesaid, in effect that said goods mentioned in said exhibit were received and kept in small quantities in said building described in said policy but for private use only and not for sale; and the defendant further says that the plaintiff had no right under the laws of Florida to sell intoxicating liquors in said county during any part of the period covered by said policy of insurance, and the plaintiff during the period between the issuance of said policy and said fire

used said building for the unlawful purpose of selling intoxicating liquors and plaintiff then and there sold intoxicating liquors unlawfully, and said alleged goods above particularly referred to were in fact intoxicating liquors; and the defendant further says that the plaintiff knowingly and wilfully swore falsely as aforesaid with the intent thereby to defraud the defendant.

2. And for a fourth additional plea the defendant says the policy declared on contains a provision to the effect that the entire policy shall be void in case of any false swearing by the insured touching any matter relating to the insurance or the subject thereof, whether before or after a loss, and the defendant further says that the said policy became and was void before this action in this that; after said fire and prior to this action, to-wit, on or about the first day of June, A. D. 1908, the plaintiff delivered to the defendant a sworn statement purporting to be proofs of loss under said policy, and said statement was subscribed and sworn to by the plaintiff under date of May 30th, 1908, before a notary public in said county, and in and by said paper, so sworn to by plaintiff, the plaintiff set forth that at the time of said fire the plaintiff had other insurance on said stock of merchandise, and the plaintiff further set forth in and by said sworn statement and then and there falsely swore that at the time of said fire the value of said stock of merchandise was ($3,050.00) Three thousand and fifty dollars, but in truth and in fact the defendant says that the value of said stock of merchandise was less than two thousand ($2,000.00) dollars, and the plaintiff knowingly and wilfully swore falsely as aforesaid with the intent thereby to defraud the defendant."

The plaintiff filed the following motion to strike the third additional plea:

"Now comes the plaintiff and moves to strike the defendant's third additional plea filed in said cause upon the following grounds, to-wit:

1.   Because said third additional plea sets up no defense to plaintiff's action.

2.   Because, in said third additional plea the facts and things about which a false statement is alleged, are immaterial matters and a false statement about such immaterial matters constitutes no defense to plaintiff's action.

2.   Because it is immaterial to the validity of the policy sued on as to whether the plaintiff kept small quantities of liquor for private use or kept such small quantities for sale.

4.   Because said third additional plea is so framed as to prejudice, embarrass and delay the fair trial of said cause."

This motion was granted. The plaintiff filed the following amended replications to the defendant's first and second pleas:

"Now comes the plaintiff by his attorney T. B. Adams, and, by leave of the court, for a first amended replication to defendant's first plea filed in said cause, says: That more than 60 days prior to the bringing of this suit the defendant waived the provision of the policy sued on in regard to the plaintiff's submitting to personal examination under oath by any person named by the defendant, by an offer and negotiations for settlement of plaintiff's loss under said policy, and defendant is estopped from claiming that this suit is prematurely brought on account of a non-compliance in regard to such personal examination, in this: that on or about March 20, 1908, after said fire, one T. A. Goode, president of defendant company, and acting as adjuster for defendant of plaintiff's loss, and acting as adjuster for the Cosmopol·tan

Fire Insurance Company in which last company plaintiff had $1,800.00 other insurance on the property destroyed by fire, was in Perry, Florida, and after the said T. A. Goode had looked over the scene of the fire, and after examining plaintiff's books, the said T. A. Goode offered plaintiff the sum of $1,400.00 as full settlement of plaintiff's loss in both of said companies upon the $500 in defendant company and the said $1,800 in said other company; that plaintiff then and there refused said offer; that at the time of making said offer the said T. A. Goode made no demand of the plaintiff as said personal examination; that plaintiff was led to believe said acts of the said T. A. Goode that no personal examination would be required of plaintiff; that such personal examination of plaintiff was never demanded until after June 1, 1908.

2. And for a second replication to defendant's first plea plaintiff says: That before the beginning of this suit defendant expressly waived the provisions of the policy sued on in regard to personal examination under oath, in this, that on or about May 22, 1908, after said fire, one T. A. Goode, president of defendant company and acting as adjuster of plaintiff's said loss, was in Perry, Florida, assisting plaintiff in making up proof of loss under defendant's said policy; that at the same time one E. H. Taylor, adjuster for said Cosmopolitan Fire Insurance Company in regard to plaintiff's loss under certain policies in said last mentioned company was also in Perry, Florida; that the said T. A. Goode and the said E. H. Taylor were then and there acting in conjunction in regard to getting up said proof of loss; that upon being asked if defendant required a personal examination of the plaintiff under the terms of defendant's policy, the said T. A. Goode and the said E. H. Taylor, in the presence of each other, acting for defendant, then and there stated that the defendant wanted

only proof of loss made up, and that defendant did not demand a personal examination of the plaintiff under oath; that the said T. A. Goode left Perry, Florida, in the next day or two, and before leaving said nothing more to plaintiff with reference to personal examination.

### Replication to Defendant's Second Plea.

And for a first replication to defendant's second plea plaintiff says: That he, the plaintiff, substantially complied with the requirements of the 'Iron Safe Clause' contained in said policy, in this: that plaintiff did keep a book containing his last inventory taken about two days before the policy sued on was issued; the plaintiff also kept a cash book and a ledger and that after the fire said books were produced, at defendant's request, for the inspection of the defendant; that plaintiff did not keep his original invoices in his iron safe and that the same were destroyed by fire, but that plaintiff obtained duplicate invoices of all goods purchased during the continuance of the policy sued on, before the fire, and at the request of the defendant furnished said duplicate invoices for the inspection of the defendant, together with duplicate freight and express bills upon the goods included in said invoices.

And for a second replication to said second plea, plaintiff says: That any forfeiture of the policy sued on by reason of any breach of the Iron Safe Clause contained in said policy has long since been waived by the defendant, and the defendant is estopped to deny its liability on said policy, in this: that defendant, after the fire, and with full knowledge of all the facts constituting the alleged forfeiture made the offer of settlement set out in plaintiff's first replication to defendant's first plea

and each and every of the allegations of said first replication, with reference to said offer of settlement, are hereby made a part of this replication.

And for a third replication to defendant's second plea plaintiff says: that defendant waived the provisions of the 'Iron Safe Clause' contained in said policy, in this, that defendant after the fire, with full knowledge of the condition of plaintiff's books and how they had been kept, caused plaintiff to obtain duplicate invoices of goods purchased, freight and express bills, at great expense and trouble to the plaintiff; and at the request of the defendant, such duplicate invoices, freight and express bills covering goods purchased after the issuance of the policy sued on and before the fire were submitted by the plaintiff to the examination of the defendant, all long before the bringing of this suit.

And for a fourth replication to defendant's second plea plaintiff says, that defendant waived the provisions of the 'Iron Safe Clause' contained in said policy, in this: that after full knowledge of all the facts constituting the alleged forfeiture, the defendant did induce the plaintiff to prepare and furnish, at great expense to the plaintiff, formal proofs of loss, which plaintiff did on May 30, 1908; that defendant kept said proof of loss and never denied liability of said policy until attempted in said second plea.

And for a fifth replication to defendant's second plea, plaintiff says, that the defendant waived the provisions of the Iron Safe Clause contained in said policy, in this: that after the fire, and after full knowledge of the facts constituting the alleged forfeiture, and after receiving from plaintiff formal proof of loss under said policy, the defendant demanded of plaintiff a personal examination under oath relative to said loss."

The defendant filed the following demurrer to such replications:

"The defendant, Southern Home Insurance Company, a corporation, by its attorney, demurs to the replication filed herein on the 2nd day of October, A. D. 1908, and says that the said replications, each thereof, severally, is bad in substance.

Substantial matters of law to be argued, each ground being applied jointly and severally to said replication, each and every:

1. A compromise offer is neither a denial nor an admission of liability, nor a waiver as alleged.

2. The defendant had the right to demand a personal examination after receipt of the sworn statement called proof of loss.

3. The defendant's right to demand a personal examination is not limited to any period preceding the plaintiff's making the sworn statement known as a proof of loss.

4. The alleged facts do not constitute waiver.

5. It is a departure in pleading.

6. The defendant had the right to demand proof of loss and to refuse to demand a personal examination until after an examination of the proof of loss.

7. Until after receiving the proof of loss, the defendant could not know whether a personal examination would be needed.

8. Furnishing paper for inspection at request does not constitute such trouble and expense as would tend to operate as a waiver of the Iron Safe Clause.

9. The manner, means, acts or words of the defendant, which caused, as alleged, plaintiff to obtain duplicate invoices and bills at expense and trouble, are in no wise indicated.

10. The pleader alleges his conclusions.

11.    The manner, means, acts or words of the defendant which induced, as alleged, the plaintiff to prepare and furnish proofs of loss, are in no wise indicated.

12.    It is not essential for the defendant to incur the expense of returning a paper called proof of loss, or to deny liability, in order not to waive the Iron Safe Clause.

13.    The defendant has the right under the policy to demand information with reference to the breach of the Iron Safe Clause, and to demand a personal examination under oath, in order to ascertain whether said clause has been broken and in what respect.

14.    What the plaintiff might say orally or on ex parte affidavit, he might deny or explain away subsequently, unless he were submitted to a personal examination under oath to ascertain definitely what sort of books he had kept and what had become of them."

This demurrer was overruled.    The plaintiff joined issue on the defendant's fifth plea, third amended plea and fourth amended plea.    A trial was had and a verdict was returned for the plaintiff upon which final judgment was entered, which judgment the defendant seeks to have reviewed here by writ of error.

*Cockrell & Cockrell* and *L. W. Blanton*, for plaintiff in Error:

*T. B. Adams*, for Defendant in Error.

SHACKELFORD, J.—(*after stating the facts.*)—The first and second assignments are based upon the sustaining of the plaintiff's demurrer to the defendant's third and fourth pleas, but, as they are not argued, under our established practice, they must be treated as abandoned.    The third assignment is the first one which is

urged before us and is that "the court erred in sustaining plaintiff's motion to strike the defendant's fourth amended plea."

This court has repeatedly had occasion to consider the respective functions performed by a motion to strike out a pleading and a demurrer thereto, and we have a long line of decisions bearing thereon.   See Russ v. Mitchell, 11 Fla. 80; Jackson Sharp Co. v. Holland, 14 Fla. 384; Wade v. Doyle, 17 Fla. 522; Wilson v. Marks, 18 Fla. 322; Huling v. Florida Savings Bank, 19 Fla. 695; Jordan v. John Ryan Co., 35 Fla. 259, 17 South. Rep. 73; Camp v. Hall, 39 Fla. 535, 22 South. Rep. 792; Little v. Bradley, 43 Fla. 402, 31 South. Rep. 342; Craft v. Smith, 45 Fla. 222, 33 South. Rep. 996; Hubbard v. Anderson, 50 Fla. 219, 39 South. Rep. 107; Concurring opinion in Atlantic Coast Line R. Co. v. Benedict Pineapple Co., 52 Fla. 165, 42 South. Rep. 529; Hooker v. Forrester, 53 Fla. 392, 43 South. Rep. 241; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318; State ex rel. Ellis v. Atlantic Coast Line R. Co., 53 Fla. 711, 44 South. Rep. 230; O'Brien v. State, 55 Fla. 146, 47 South. Rep. 11; Ray v. Williams, 55 Fla. 723, 46 South. Rep. 158; Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 South. Rep. 732; Poppell v. Culpepper, 56 Fla. 515, 47 South. Rep. 351; Hildreth v. Western Union Telegraph Co., 56 Fla. 387, 47 South. Rep. 820; Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992; Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48 South. Rep. 209; Hammond v. Vetsburg Co., 56 Fla. 369, 48 South. Rep. 419; Williams v. Pensacola, St. A. & G. S. S. Co., 57 Fla. 237, 48 South. Rep. 630; Johnson v. McKinnon, 57 Fla. 120, 48 South. Rep. 910; Southern Home Insurance Co. v. Murphy, 57 Fla. 191, 49 South. Rep. 537.

Still other decisions of this court may be found re-

ferred to in these cited cases.    It will be seen that even
as far back as Russ v. Mitchell, 11 Fla. 80, this court
recognized that there was a distinction between these
two modes of procedure, holding therein that "to author-
ize the striking out of a plea on motion, it must not only
be informal and bad, but it must be wholly irrelevant."
It must be admitted, however, that a critical examination
and comparison of all the opinions of this court bear-
ing upon the question discloses that, while it has been
uniformly recognized that there is a difference in the
functions performed by a motion to strike out a plead-
ing and a demurrer thereto and that they cannot be
used interchangeably or indiscriminately, the line of de-
marcation between the two has not always been kept
clear but at times has been wavy and shadowy.    This
has rendered it difficult to determine in some cases
whether a demurrer or a motion was the proper method
of attack, and consequently, as a measure of precaution,
members of the bar have frequently resorted to both
methods at the same time.    It may be that it is not al-
ways an easy matter to differentiate the two methods.
Some pleadings may be infected with such vices as to
be open to attack either by a motion to strike out or
by demurrer.    It should also be borne in mind that there
is likewise a difference between a motion to strike out a
pleading and a motion for the compulsory reformation
thereof.    However, where either of such motions is made
under the statute, the court is expressly authorized to
make a proper order respecting the pleadings; and this
may be done even though the motion be not entirely ap-
propriate in its terms.    Certain principles regulating
the use of these respective methods seems to have been
fairly well established, even though they may not always
have been closely followed or even clearly defined.    It is
not our purpose in this opinion to enter upon an extend-

ed discussion of this question of practice or to attempt to reason it out, but rather to select from the different cases such principles as we conceive to have been established and which will prove helpful to us in disposing of this assignment. We would refer with full approval to Ray v. Williams, 55 Fla. 723, 46 South. Rep. 158, wherein it was held that "there is inherent in courts of justice implied power to prevent abuse of the court procedure. To this end a pleading may be stricken if it is wholly irrelevant to the cause, or if it violates a rule or order of the court, or if it be a palpable attempt to impose upon or trifle with the court, as by merely repeating or reiterating to no better effect the same matter already presented and adjudged with no additions of new matter. Striking a pleading is a severe remedy and should be resorted to only in cases palpably requiring it for the proper administration of justice. A pleading in proper form duly authenticated and filed should not be stricken for insufficiency. Its sufficiency as a pleading should be tested by demurrer or other proper proceedings. The remedies by motion to strike and by demurrer should not be indiscriminately applied as they are governed by essentially different rules of procedure. A demurrer goes to the pleading as an entirety for insufficiency; while a motion to strike is applicable where the pleading as an entirety or any part of it is wholly irrelevant or for any reason improper." To the like effect, see Hammond v. Vetsburg Co., 56 Fla. 369, 48 South. Rep. 419, holding that "a merely defective plea, one that is only wanting in fullness or explicitness or otherwise subject to attack by demurrer, cannot be tested by a motion to strike it from the files. The court will not decide the legal sufficiency of a plea on such a motion when a good defense is defectively stated." If a plea is so faulty and defective

as to be hopelessly bad and to constitute practically no defense, or clearly tends to confuse the issue, as the case may be, so that the court would be warranted in striking out such plea of its own motion, no reversible error would be committed in sustaining a demurrer thereto, even though the proper method of attack would be by motion.   It may constitute reversible error, however, to strike out a plea which apparently contains a meritorious defense, even though the same be indefinitely pleaded and wanting in certainty.   See Jackson Sharp Co. v. Holland, 14 Fla. 384 and the reasoning in Ray v. Williams, *supra*.   If it is clearly and affirmatively made to appear that the party whose plea was so stricken out was not injured or harmed thereby in any way and was not prevented from submitting his case to the jury under such a state of pleadings as to give him all the benefit he would have had if such a plea had not been so stricken, while such ruling would constitute technical error it would not work a reversal of the judgment but would be held to be harmless error.   As was said in McKay v. Lane, 5 Fla. 268, text 276, "This court has uniformly proceeded upon the practice not to reverse a judgment, however erroneously an isolated point may have been ruled by the judge below, when it is clearly apparent that the party complaining had been in no degree injured by the improper ruling."   Also see Jacksonville, M. P. Ry. & Nav. Co. v. Warriner, 35 Fla. 197, 16 South. Rep. 898, and authorties there cited; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South Rep. 318; Williams v. Pensacola, St. A. & G. S. S. Co., 57 Fla. 237, 48 South. Rep. 630.   Where, however, no such showing is made to the appellate court, such ruling may constitute reversible error, on the principle that error having been clearly made to appear, injury must be presumed.   See Baker v. Chatfield, 23 Fla. 540, 2 South. Rep. 822; Simmons v.

Spratt, 26 Fla. 449, 8 South. Rep. 123, S. C. 9 L. R. A. 343; Hays v. Ernest, 32 Fla. 18, 13 South. Rep. 451; Mayer v. Wilkins, 37 Fla. 244, 19 South. Rep. 632; Armour v. Doig, 45 Fla. 162, 34 South. Rep. 249; Pensacola Electric Ter. R. Co. v Haussman. 51 Fla. 286, 40 South. Rep. 196, and authorities there cited; Walker v. Parry, 51 Fla. 344, 40 South. Rep. 69. It is true that these cited cases do not deal with erroneous rulings on the pleadings, but the principle involved therein is the same as that in the instant case. We are not unmindful of another principle so often enunciated by this court that every presumption is in favor of the correctness of the rulings of the trial court. We also remember the holding in Hooker v. Johnson, 10 Fla. 198, that, "if upon a consideration of the whole case, the appellate court shall conclude that substantial justice has been done between the parties and that the jury might and ought from the facts to have come to the conclusion that they did, the verdict will not be disturbed," in which the effect of an erroneous instruction was considered and discussed. We have no criticism to offer as to this holding save as to the use of the word "ought" therein. See Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44.

We call attention to the fact that in the instant case there is no bill of exceptions, so we have before us neither the evidence adduced nor the charges and instructions given at the trial, so we are precluded from an examination of either. This being true, if we should find that the trial court erred in striking out the plea in question, we cannot say that from a " consideration of the whole case" such error was harmless. See Hooker v. Johnson, *supra,* and Baker v. Chatfield, *supra.* It may be well to mention one other matter of practice. We have held that the granting or denial of a motion for the compulsory amendment of a pleading, based on the statute, is

a matter resting within the sound judicial discretion of the trial court and that the ruling thereon will not be disturbed by an appellate court, unless it is plainly made to appear that there has been an abuse of such discretion. Seaboard Air Line R. Co. v. Scarborough, 52 Fla. 425, 42 South. Rep. 706, and Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318. Can this principle be extended to the granting or refusal of a motion to strike out a pleading? Some courts have gone thus far, but we must decline to follow them. It may be that the *denial* of a motion to strike a plea is a matter resting within the discretion of the trial court, but, even so, the *granting* of such a motion could not well be held a matter of discretion. See Lankford v. Green, 62 Ala. 314, and Lester v. Johnson, 137 Ala. 194, 33 South. Rep. 880.

In the light of these principles, we now take up for determination the question as to whether or not error was committed in striking out the plea in question, and, if so, whether or not the same constitutes reversible error. For the sake of convenience, we set forth again such fourth amended plea and the motion to strike the same, which are respectively as follows:

"And for a fourth amended plea the defendant says, the policy declared on contains among other matters a provision to the effect that said policy shall be void in case of any false swearing by the plaintiff touching any matter relating to the insurance or the subject matter thereof, whether before or after the loss, and there was false swearing by the plaintiff after said loss touching the subject matter of the insurance in this, that the plaintiff submitted to the defendant as a basis of his claim upon this defendant under said policy a statement sworn to by the plaintiff whereby it was set forth in effect that certain whiskeys and intoxicating liquors were received

and kept in small quantities in said building for private use only and not for sale; but so it was, during the period of time covered by said policy prior to said fire the plaintiff used the premises for the unlawful purpose of selling intoxicating liquors, and the plaintiff knowingly and wilfully swore falsely as aforesaid with the intent to defraud the defendant."

"Now comes plaintiff by Thos. B. Adams, his attorney and moves the court to strike defendant's 4th amended plea upon the following grounds, to wit:

1. Because said plea presents no defense to plaintiff's cause of action.

2. Because said plea tenders an immaterial issue, to wit, the alleged keeping by plaintiff of intoxicating liquors for sale.

3. Because a false statement upon such immaterial fact as the sale of liquor does not avoid the policy.

4. Because said plea tends to embarrass the fair trial of said cause."

It seems to us that, under the former decisions of this court which we have cited and for the reasons given therein, all of the grounds of this motion, with the exception of the last, are applicable as grounds for demurrer rather than of a motion to strike out, since they question the sufficiency of the plea as a defense. See especially Ray v. Williams, 55 Fla. 723, 46 South. Rep. 158. It is not apparent to us that such plea is wholly irrelevant, or that it is sham or frivolous. See Russ v. Mitchell, 11 Fla. 80 and Jackson Sharp Co. v. Holland, 14 Fla. 384. We are not prepared to hold that it is so insufficient in substance as to be open to attack by demurrer, but that point is not now before us for determination. See Southern Home Insurance Co. v. Murphy, 57 Fla. 191, 49 South. Rep. 537. We are clear that the first three grounds of the motion are not tenable, but, as

we now have to consider the fourth ground, it seems advisable to look into the plea sufficiently to ascertain what was the nature of the defense which it attempted to set up. We do not feel that we are called upon, however, to make any extended investigation or to discuss the matter at length.

We find upon examination that the policy, which was attached to and made a part of the declaration by apt words, among other things, contains the following clause : "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

In Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, text 392, 45 South. Rep. 761, text 787, we said: "All parties litigant who are *sui juris*, whether railroad corporations or their employes, in the eyes of the law, before the courts, stand upon an equal footing, entitled to equal rights and protection, and none to special privileges." We would now. add insurance companies and the insured, and that the persons insured, like railroad employes, cannot be said "to be wards of the court." We also held in the cited case, as in Scotch Mfg. Co. v. Carr, 53 Fla. 480, 43 South. Rep. 427, that parties are free to make what contracts they please, so long as no fraud or deception is practiced and there is no infraction of law. We further held that the fact that one of the parties made a rather hard bargain would not avoid the contract. This being true and the plaintiff having accepted a policy from the defendant with such a clause or condition of the contract therein, why should not the

defendant have the legal right, in an action brought against it on such policy, to base its defense on such provision? For a general discussion of such provision in a fire insurance policy, the construction thereof and its availability as a defense, we would refer to 19 Cyc. 855, 856, and cases cited in notes. For the reasons already given we decline to go into a discussion of this branch of fire insurance law. However, it might be upon the testing of this plea by demurrer, we are clear that it was not open to attack by a motion to strike it out upon the grounds set forth. It is contended by the plaintiff that such fourth amended plea was properly stricken because it simply reiterated the substance of the fourth plea, which had previously been adjudged bad upon demurrer. A comparison of such fourth amended plea with the fourth original plea, which will be found in the statement preceding this opinion, shows material points of difference in the two pleas. We shall not take the time to point them out, as they are readily apparent. Under the principle enunciated in Ray v. Williams, 55 Fla. 723, 46 South. Rep. 158, and Southern Home Insurance Co. v. Murphy, 57 Fla. 191, 49 South. Rep. 537, we are of the opinion that the trial court erred in striking out this plea. It is further contended by the plaintiff that, even if error was committed, it was harmless, since the defendant had the full benefit of the defense attempted to be set up in such fourth amended plea under the fifth plea, which was permitted to stand and will be found in the statement. A comparison of these two pleas does not sustain this contention. Not having the entire record before us, we cannot say that the defendant suffered no injury by this erroneous ruling.

The fourth assignment is based on the granting of the plaintiff's motion to strike out the defendant's third additional plea. This plea and the motion to strike the

same will be found copied in the statement, so we do not repeat them here.   What we have just said concerning the preceding assignment is largely applicable to this assignment also, so we content ourselves with saying that it is not made to appear to us that this third additional plea was subject to the motion to strike, and we are of the opinion that the court committed error in granting the same.

The fifth to the eleventh assignments inclusive are based upon the overruling of the defendant's demurrer to two replications filed by the plaintiff to the defendant's first plea and five replications filed to the second plea. These pleas, replications and the demurrer will be found copied in full in the prefatory statement.   It is earnestly contended by the plaintiff that "when there are several replications to a single plea, upon a joint and several demurrer to all such replications, if any one of the replications is a good answer to the plea the plaintiff is entitled to judgment."   In support of this contention, the plaintiff cites Mt.  Carbon Coal & R. R. Co. v. Andrews, 53 Ill.  176; Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 South. Rep. 62, S. C. 67 L. R. A. 518, 110 Amer. St. Rep. 118; Jacksonville, T. & K. W. Ry. Co. v. Griffin, 33 Fla. 602, 15 South. Rep. 336.   We have given these cited authorities a careful examination, reading them in connection with the argument made by the plaintiff in his brief, but fail to find wherein they sustain his contention.   Obviously, if the defendant had seen fit so to do, it could have filed a separate demurrer to every one of the several replications, had a ruling made upon every demurrer, assigned error on every such ruling and brought all of such assignments here to be passed on.   This being true, why could not the defendant file a joint and several demurrer to each and every of such replications, as was

done, and be entitled to the same privilege, right and benefit as though it had filed separate demurrers? It seems to us that such a course, economizing both time and space as it does, is to be commended, rather than condemned. It is further contended by the plaintiff that, if either of the two separate replications to the first plea and any one of the five separate replications to the second plea, when the same were so tested by the demurrer, should be found by this court to be good, no reversible error was committed by the trial court in overruling the demurrer as to all of said replications. The reason advanced by the plaintiff for this contention is that if any replication should be left standing to each of such pleas it would be a good answer to such plea and would entitle the plaintiff to prevail. The fallacy in this reasoning is that all of the respective replications were left standing by the trial court and so helped to frame and determine the issues, and the making up of the issues necessarily determined the kind, nature and character of the evidence that was admissible thereunder at the trial. Now, as we have already had occasion to point out, none of the evidence has been brought before us, so we are not advised what was adduced, what was admitted or excluded or what rulings were made thereof. Neither are any of the charges or instructions brought before us. All this being true, if we should find that any one of such replications was erroneously permitted to stand, under the principle previously enunciated in this opinion, how could we declare such error so found to be harmless? If the plaintiff had conceived that any errors which might have been committed, and upon which the defendant relied for a reversal of the judgment, were harmless, or not sufficient to work a reversal, he should have availed himself of the privilege or right conferred by Special Rule 1 of the "Special Rules

to be observed in the preparation of bills of exceptions and transcripts of the record," adopted March 2, 1905, and amended June 12, 1905, found on page 19 of such Rules, prefixed to 51 Fla., and page X prefixed to 37 South. Rep., and had the evidence, and such other proceedings at the trial as he conceived advisable or necessary, properly incorporated in the transcript and brought before us. Not having done this, he is in no position to complain if, following the long established practice in this court, we presume injury when error is made to appear. It is still further contended by the plaintiff that a bad replication is a good answer to a bad plea. This contention is correct, and this principle has frequently been announced by this court. See Wade v. Doyle, 17 Fla. 522, and Oxford Lake Line v. First Nat. Bank of Pensacola, 40 Fla. 349, 24 South. Rep. 480. We find upon examination that the first and second pleas, to which the several replications were filed, were demurred to and that the demurrer was overruled, after, argument by the respective counsel, therefore, in passing upon the demurrer to the replications, it is hardly likely that the trial judge had changed his mind, so that he overruled the demurrer to such replications because he was of the opinion that such first and second pleas were bad. This being true, we do not feel called upon to do more than to examine such pleas sufficiently to determine if they are apparently good. This we have done and we fail to detect wherein they are so defective as to warrant us in holding that bad replications would constitute good answers thereto.

We now take up for examination the ruling of the court upon the demurrer to the two replications to the first plea. This plea avers, in brief, that the policy declared upon contained, among other things, a provision to the effect that the plaintiff should submit to examina-

tion under oath by any person named by the defendant, and that after the fire had ocurred and "straightway after the plaintiff in the month of June, 1908, had submitted to this defendant what he called proofs of loss this defendant demanded in writing of the plaintiff" that he submit to such examination and named the examiner, but that the plaintiff refused to submit thereto. The two replications filed to this plea seek to avoid the force and effect thereof by setting up the fact that the defendant by its conduct had waived the right to require such examination.   Were these replications open to the attack made upon them by the demurrer?   We shall not undertake to consider the fourteen grounds of the demurrer in detail.   The first replication attempts to set up a waiver of the provision in the policy as to such examination of the plaintiff as is averred in the plea by virtue of "an offer and negotiations for settlement of plaintiff's loss under said policy," by reason of which the defendant was estopped from claiming that the action was prematurely brought.   The matters set out in the replication as constituting such waiver are that on or about the 20th of March, 1908, after the fire, the president of the defendant company, acting as the adjuster thereof, as well as in the same capacity for another insurance company in which the plaintiff also had a policy for $1,800.00, after looking over the scene of the fire and examining the plaintiff's books, offered the plaintiff the sum of $1,400.00 in full settlement of his claims against both of such companies; that the plaintiff then and there refused such offer, and at the time of making such offer the president of the defendant company "made no demand of the plaintiff as said personal examination; that plaintiff was led to believe by said acts of the said T. A. Goode that no personal examination would be required of plaintiff; that such personal examination

of plaintiff was never demanded until after June 1, 1908."
We find that the declaration alleges that the fire in question occurred on the night of March 11th, 1908, and that the policy, a copy of which is attached to the declaration and made a part thereof by apt words, as we have already said, contains, among other provisions the following:

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of accounts, bills, invoices, and other vouchers or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made."

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

"No suit or action on this policy, for the recovery of any claim, shall be sustained in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

The declaration further alleges that "although all conditions have been performed and fulfilled, and all events and things existed and happened, and all periods of time have elapsed to entitle the plaintiff to a performance by the defendant of said contract, and to entitle the said

plaintiff to the said sum of $500.00, and nothing has occurred to prevent the plaintiff from maintaining this action, yet the said defendant has not paid or made good to said plaintiff the said amount of the loss and damage aforesaid, or any part thereof, but refuses so to do."

As we have already seen, the first plea avers that "straightway after the plaintiff in the month of June, A. D. 1908, submitted to this defendant what he called proofs of loss. this defendant demanded in writing of the plaintiff" that he submit to such examination as is referred to in the clause of the policy which we have copied and named such examiner, but that the plaintiff refused so to do. As is readily apparent from the pleadings, the plaintiff does not deny the existence of the clause in the policy providing for such examination or question its validity or legality, but simply seeks to show that the defendant had waived a compliance with such requirement. Now, unless such waiver is well pleaded in such replication, then such action is prematurely brought, by reason of the other provisions in the policy which we have copied to the effect that "the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required," as well as by reason of another provision, which we have also copied, to the effect that no suit or action upon such policy "shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

It has already been necessary to extend this opinion to a greater length than is desirable and still other assignments remain to be treated. We shall not undertake, therefore, to discuss the interesting though vexed question of a departure in pleading, which formed one of the

grounds of the demurrer and is earnestly urged before us, but content ourself with referring to what this court has said upon that point in Tillis v. Liverpool & L. & G. Ins. Co., 46 Fla. 268, 35 South. Rep. 171, S. C. 110 Amer. St. Rep. 89, and Eagle Fire Co. v. Lewallen, 56 Fla. 246, 47 South. Rep. 947. It was held in Firemen's Fund Ins. Co. v. Sims, 115 Ga. 939, 42 S. E. Rep. 269, that "a requirement in a policy of fire insurance that the insured shall submit to an examination under oath touching the matters relating to the risk assumed by the company and the destruction of the property insured is binding and valid, and a refusal to comply with this condition will preclude the insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition." The opinion in this case was rendered by Mr. Justice COBB and will be found to be ably reasoned, well supported by the authorities cited therein, and very much in point in the instant case. Also see 13 Amer. & Eng. Ency. Law (2nd ed.) 358, and 19 Cyc. 853, and authorities cited in notes. The reasoning in the case of Tillis v. Liverpool & L. & G. Ins. Co., *supra,* and the authorities cited therein upon the question of waiver, especially Titus v. Glens Falls Ins. Co., 81 N. Y. 410, and Gibson Electric Co. v. Liverpool & L. G. Ins. Co., 159 N. Y. 418, 54 N E. Rep. 23, and what conduct will estop an insurance company from relying and insisting upon a provision in the policy, will be found to be serviceable and instructive. The replication in question does not attempt to set up an express waiver, but only that the conduct of the insurer was of such a nature as to constitute a waiver by it of the provision in the policy as to an examination of the insured and estop the company from pleading non-compliance with such provision as a defense to the action. Is this contention of the plaintiff well founded? As was

said in Titus v. Glen Falls Ins. Co., *supra,* that "a waiver cannot be inferred from its mere silence." Therefore, the mere fact that the president of the defendant company, on or about the 20th of March, 1908, after looking over the scene of the fire and examining the plaintiff's books, made an offer to the defendant of compromise and settlement, which was then and there refused, and such president then made no demand for such personal examination, would not be sufficient to constitute a waiver or to estop the defendant. That such an offer of compromise and settlement as is set up in the replicaiton in question, which was declined, would not constitute a waiver or estoppel, see Continental Ins. Co. v. Cummings, Tex.   , 95 S. W. Rep. 48, and Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527. Other authorities bearing upon this point may be readily found. The plea having averred that straightway upon receiving proofs of loss the defendant demanded such examination, which was refused by the plaintiff, we are of the opinion for the reasons stated that such replication did not constitute a sufficient reply thereto and that the overruling of the demurrer to the replication was error. If the plaintiff saw fit to stand upon his rights as he conceived them to exist and to refuse to submit to the requested examination and bring his action, he must be held to have done so at his peril. We fail to see how he could well have been led to believe from the conduct of the president of the defendant company, as the same is set out in the replication, that no such personal examination would be required. Much of the reasoning in Hanover Fire Ins. Co. v. Lewis, 28 Fla. 209, 10 South. Rep. 297, and especially in Southern Home Ins. Co. v. Faulkner, 57 Fla. 194, 49 South. Rep. 542, though concerning another clause in the policy, is also applicable here, a similar principle being involved.

What we have said in treating this assignment is sufficient to dispose of the sixth assignment, based upon the overruling of the demurrer to the plaintiff's second replication to the defendant's first plea. It necessarily follows that error was committed in so doing.

We now come to the seventh to the eleventh assignment inclusive, based upon the overruling of the demurrer to the plaintiff's five separate replications to the defendant's second plea. It is true, as was held in the case of Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 South. Rep. 62, S. C. 67 L. R. A. 518, 110 Amer. St. Rep. 118, that, under the statute, then section 1059 of the Revised Statutes of 1892, now section 1451 of the General Statutes of 1906, "a plaintiff may file more than one replication or subsequent pleading to any pleading of the defendant if he so desires." However, the advisability of filing a number of replications to the same plea is questionable, to say the least of it, since such practice would have the tendency to confuse the issues to be tried by the jury, which it is desirable to have as simple and as little prolix and involved as well may be. It should also be remembered that "it is the first essential of good pleading, that it be characterized by *certainty,* and this quantity is especially requisite in a replication." Sealey v. Thomas, 6 Fla. 25. This is in line with the settled principle in this court that every pleading is to be most strictly construed against the pleader thereof. Now we could hardly be expected to write a treatise on fire insurance law in one opinion. This has already grown into a lengthy opinion. It has developed that the judgment must be reversed for the errors which we have pointed out. When the case is remanded, the pleadings will necessarily have to be largely recast and different issues may be framed thereby. It is not likely that the questions presented by these assignments will arise on an-

other trial. Light will be found thereon in the authorities we have cited in disposing of the previous assignments. We, therefore, do not feel called upon to protract this opinion any further or to pass in detail upon these several assignments.

The twelfth and last assignment that the court erred in rendering judgment for the plaintiff must be sustained. Judgment reversed.

WHITFIELD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.