PHOENIX INSURANCE COMPANY OF BROOKLYN, NEW YORK, A CORPORATION, *Plaintiff in Error,* v. W. H. BRYAN AND J. W. SEALEY, *Defendants in Error.*

1. In passing upon an assignment based upon the overruling of the motion for a new trial, an appellate court will consider only such grounds thereof as are argued, treating the other grounds as abandoned.

2. It is not sufficient merely to repeat the error assigned and state that in the opinion of counsel the action or ruling of the court complained of constitutes error, or that an inspection of the record upon the point in question will show that error was committed. Unless the error complained of is so glaring or patent that no argument is needed to demonstrate

it, counsel must call the attention of the court to the specific points upon which he relies to show error, otherwise the court will feel warranted in treating such assignment as abandoned.

3. In an action upon a fire insurance policy wherein two principal points upon which the defendant company seeks to avoid its liability and justify its refusal to pay the amount of insurance are (1) that gasoline was kept and used on the premises, contrary to one of the provisions of the policy, and (2) that the plaintiffs permitted the building to be used for the purpose of carrying on the business of a pressing club and pool room, which business was of "greater hazard than the business of a cold drink and fruit store, the risk assumed by said policy, and requiring the payment of a larger premium." and the jury found adversely to such contentions, and the trial judge concurred in such finding by refusing to disturb the verdict, and the appellate court from an examination of all the evidence adduced at such trial is of the opinion that as reasonable men the jury might well have found such verdict from the evidence, such court will likewise refuse to disturb such verdict or to reverse the judgment.

This case was decided by Division A.

Writ of Error to the Circuit Court for Suwannee County.

The facts in the case are stated in the opinion of the court.

*Rees & Rees* and *J. F. Harrell,* for Plaintiff in Error;

*Hardee & Butler,* for Defendant in Error.

SHACKLEFORD, J.—A judgment is brought here for review which the plaintiffs recovered against the defendant in an action at law upon a fire insurance policy. The declaration substantially follows the statutory form in such actions and a copy of the policy is attached thereto.

Four pleas were filed as were also replications and rejoinders, but, as no assignment is based upon the pleadings, we do not set any of them forth. Only one error is assigned, the overruling of the motion for a new trial, which contains twelve grounds, some of which are expressly and others are impliedly abandoned, and some grounds are argued together. As we have repeatedly held, in passing upon an assignment based upon the overruling of the motion for a new trial, we will consider only such grounds thereof as are argued, treating the other grounds as abandoned. See Johnson v. State, 55 Fla. 41, 46 South. Rep. 174, and Putnal v. State, 56 Fla. 86, 47 South. Rep. 864. We have likewise repeatedly held that it is not sufficient merely to repeat the error assigned and state that in opinion of counsel the action or ruling of the court complained of constitutes error, or that an inspection of the record upon the point in question will show that error was committed. Unless the error complained of is so glaring or patent that no argument is needed to demonstrate it, counsel must call the attention of the court to the specific points upon which he relies to show error, otherwise the court will feel warranted in treating such assignment as abandoned. See Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656, and prior decisions of this court therein cited. A number of subsequent decisions to the same effect may be readily found. This reasoning applies with like force and effect to the grounds of the motion for a new trial, when an assignment of error is predicated upon the ruling of the court thereon.

We shall not treat separately or in detail the grounds of the motion that are argued, but shall consider what we deem to be the vital and decisive points presented.

The two principal points upon which the defendant seeks to avoid its liability and to justify its refusal to pay the amount of insurance are (1) that gasoline was kept

and used on the premises, contrary to one of the provisions of the policy, and (2) that the plaintiffs permitted the building to be used for the purpose of carrying on the business of a pressing club and pool room, which business was of "greater hazard than the business of a cold drink and fruit store, to the risk assumed by said policy, and requiring the payment of a larger premium."

The policy in question was a standard policy and contained the provisions and covenants found in such policies, which are so well known that we deem it unnecessary to copy the provisions upon which defendant relies. No contention is made by the plaintiffs that the defendant practiced any fraud or deception upon them in issuing such policy or that any of the provisions thereof are unlawful. We are warranted, therefore, in assuming the validity and legality of such provisions. This being true, the defendant was entitled to base its defense to an action upon such policy upon the failure of the plaintiffs to comply with any of the provisions of such policy. See Southern Home Insurance Co. v. Putnall, 57 Fla. 199, 49 South. Rep. 922. It may be that some of the pleadings in the instant case are defective in some of the respects pointed out in the case just cited and in Southern Home Insurance Co. v. Murphy, 57 Fla. 191, 49 South. Rep. 537, but as the validity of such pleadings was not called in question, they are not before us for construction. We shall copy the evidence adduced upon these two points. W. K. Collins, a witness introduced on behalf of the defendant, testified as follows: "I know Dr. Bryan and Mr. Sealey. I was occupying the building belonging to them at the time of the fire. I was conducting the business of cold drink and fruit stand. There was no other kind of business besides that operated by me in that building. There were pool tables in the building. No one had charge of them, they were not used at all. The boys used them

a little bit in the daytime; roll the balls about on them. There was a boy who conducted some other business in the building. He pressed a few clothes in there. I think there was gasoline kept in the building. There was gasoline kept in the building. I could not say what quantity. He kept a little there for the purpose of cleaning clothes. He used it as a preparation for cleaning clothes. I don't know what all he had in the preparation for cleaning clothes. I do not know whether he had as much as one-half gallon of gasoline in there at a time or not. I do not know how much he had in there. I do not know whether he had as much as a gallon there or not. I did not carry gasoline in there myself. He had gasoline in a gallon oil can he used a part of the time. I do not remember his getting gasoline but twice. He used it for the purpose of cleaning clothes. He used a preparation of gasoline and kerosene and something else for the purpose of taking dirt out of the clothes. I suppose he kept it there all the time as a preparation for cleaning. I was there in the building all the time. He did not burn gasoline there at all. To heat the irons or anything of the kind they used wood alcohol on Dr. Bryan's stove. Yes, used wood alcohol. The fellow I was speaking about being in the building with me having the pressing club was the one that done the pressing, a darkey by the name of Arthur Hicks. He done the pressing for himself. He was running the pressing club himself. He attended to Dr. Bryan's horse for him. Dr. Bryan was frequently in the building himself. I suppose he knew what was going on in the building, he was there nearly every day. I paid the rent for the building to Dr. Bryan.

### CROSS-EXAMINATION.

Yes, I only knew of twice that the darkey bought gasoline. I suppose that was used in the general mixture he

had. No sir, I do not know that it went into the general mixture, but I suppose that was what he used it in. No gasoline was sold there in the store. Gasoline was kept for no other purpose except for the preparation I have spoken about. I do not think he had more than a quart or two because he always mixed in a quart bottle. There were several articles in this mixture, I do not know what all they were. So far as I know there was no gasoline except what was in that bottle. I do not know whether they mixed ammonia and alcohol in that bottle or not; I do not know what was in it. The darkey had been gone eight or ten days when the fire occurred. He had been sick and had been down for a month. After he got up he was round the Park there for quite a while. He was back there to the place in the room where he stayed only about a couple of weeks after he got up from his spell of sickness. He was back there a couple of times. I do not know how many times—he had been round there several days after he got up from his bed of sickness because he went away and had been in Tallahassee some four or five days before the fire occurred.

### Re-Direct.

The gasoline they used there they used entirely for the pressing club. I did not use any in my business. I do not know whether there was any gasoline in the building at the time of the fire or not. I knew that back before the fire a month or two weeks, three or four weeks, gasoline was used there and from then on back for quite a while there had been gasoline in the building. There were two pool tables there. Yes, I had cues and balls, etc. There was no charge made for pool playing on the tables. Anybody could come in and knock them around."

W. H. Bryan, one of the plaintiffs, being recalled by

them in rebuttal, testified as follows: "I do not know what the preparation consisted of now, that was used for the purpose of cleaning clothes, occasionally, on two occasions, I have seen the preparation on the boy's table there. It was a whitish preparation, milky preparation."

This is all the evidence which sheds any light upon such points. The jury found adversely to the two contentions of the defendant, and the trial judge concurred in such finding by refusing to disturb the verdict. We are by no means prepared to say that as reasonable men the jury could not have found such verdict from the evidence. See Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44. We do not intend to make the impression that we are inclined to disapprove the verdict. On the contrary, we are of the opinion that the jury might well have so found.

No instructions were requested by either party. The defendant excepted, in its motion for a new trial, to certain specified portions of the general charge given by the court. Subjecting the entire charge to a careful examination, we are not prepared to declare that any reversible error has been made to appear in the portions so excepted to. Taken as an entirety, the law applicable to the issues being tried would seem to have been pretty fairly stated. We see no useful purpose to be accomplished by copying the charge in this opinion, or by discussing the exceptions taken thereto. If the defendant desired further or more explicit instructions upon any point it should have prepared and presented them to the trial judge.

We have examined all the authorities cited to us by the respective counsel, as well as others. As is true of almost every point of insurance law, we find the authorities very divergent and conflicting as to the construction and applicability of the provision in insurance policies concerning the keeping and using of gasoline and other substances of like nature upon the insured premises.

Upon the pleadings and the evidence in the instant case, we do not see wherein a discussion of the authorities would be of any benefit. Finding no reversible error, the judgment must be affirmed.

WHITFIELD, C. J., and COCKRELL, J., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.