PENSACOLA ELECTRIC COMPANY, A CORPORATION, *Plaintiff in Error*, v. ELIZABETH M. BISSETT AND RICHARD BISSETT, HER HUSBAND, *Defendants in Error*.

PENSACOLA ELECTRIC COMPANY, A CORPORATION, *Plaintiff in Error*, v. RICHARD BISSETT, *Defendant in Error*.

1. Although an expert witness may not be questioned, either upon his direct or cross-examination, upon an hypothesis having no foundation in the evidence, yet it is not required that the hypothetical case put to him should be an exact reproduction of the evidence, or an accurate presentation of what

has been testified to. Counsel may present to him any hypothetical case in accordance with any reasonable theory based upon the evidence, but, in the event that the jury should find that the facts upon which such hypothesis or theory of the case was based have not been proved, the answer of the expert necessarily falls with the hypothesis.

2. An expert witness who has given his opinion upon any question or hypothesis submitted to him may be further interrogated upon his cross-examination as to the reasons for such an opinion. And for this purpose it is within the discretion of the trial court to widen the range of such cross-examination, even so as to include matters not strictly pertinent to the issues, in order to test the witness' means of knowledge, the extent of his information, memory, accuracy or credibility, and an appellate court will not interfere with the exercise of such discretion, unless a clear abuse thereof is made to appear.

3. Where an instruction, so far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in accordance with the facts of the case, such defect is cured if subsequent instructions are given containing the required qualifications or exceptions. It is not required that a single instruction should contain all the law relating to the particular subject treated therein.

4. In determining the correctness of charges and instructions, they should be considered as a whole, and, if as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail. In passing upon a single instruction or charge, it should be considered in connection with all the other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction must fail, unless under all the peculiar circumstances of the case the court should be of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury.

5.  In determining the correctness of charges and instructions, they should be considered as a whole, but where a special charge or instruction in itself announces a patently erroneous proposition of law, it must affirmatively and ·clearly appear that the presumptive harm caused thereby has been entirely removed, or the judgment should be reversed.

6.  In an action brought by a passenger against a railroad or electric company to recover damages for personal injuries alleged to have been caused by the negligence of such company, if the defendant conceives that the charges and instructions already given by the court are not sufficiently full or specific upon any point, it should prepare such additional instructions as it may deem proper and request that they be given, and where such additional instructions are given by the court and they cure and supply the supposed or real defect, error or omission in the previous charges or instructions, then the defendant has no ground for complaint.

7.  An appellate court should not reverse a judgment, however erroneously an isolated point may have been ruled by the judge below, when it is clearly apparent that the party complaining was in no way injured by such improper ruling.

8.  Section 3148 of the General Statutes of 1906 creates the presumption that a person injured by the operation of a railroad was thus injured through the negligence of such road and thereby casts upon such company the burden of showing that its agents exercised all ordinary and reasonable care and diligence. In an action brought by a passenger against such company seeking to recover damages for personal injuries alleged to have been caused by the negligence of such defendant, it is primarily for the jury to determine from the evidence, under appropriate instructions from the trial court, whether or not the defendant company has met and relieved itself of such burden so cast upon it by the statute.

9.  In passing upon an assignment based upon the ruling of the trial court in denying a motion for a new trial, which questions the sufficiency of the evidence to sustain the verdict, the guiding principle for an appellate court is not what it may think the jury ought to have done, or what such court may

Pensacola Electric Co. v. Bissett *et al.*—Opinion of Court.

think it would have done had it been sitting as a jury in the case. but whether as reasonable men the jury could have found such verdict from the evidence adduced. If this question can be answered in the affirmative, the action of the trial court upon such motion should not be disturbed.

10. When a jury has rendered its decision through its verdict, it should be regarded as settling all controverted questions of fact submitted for determination, unless it clearly appears that the jurors in arriving at such verdict must have been improperly influenced by considerations outside the evidence. So the trial judge is given a supervisory power over verdicts and the right to set them aside and grant new trials. In an action, where the trial judge has exercised such supervisory power, being of the opinion that the damages allowed were excessive, and directed the filing of remittiturs but upon other points refusing to interfere with the verdicts, an appellate court will do likewise, unless the amounts of such verdicts, after the filing of the remittiturs, are still such as to shock its judicial conscience.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Blount & Blount & Carter*, for Plaintiff in Error;

*Jones & Pasco* and *E. T. Davis*, for Defendants in Error.

SHACKLEFORD, J.—Two actions were brought against the plaintiff in error, one by Elizabeth M. Bissett, joined by her husband, Richard Bissett, and the other by Richard Bissett, seeking to recover damages for personal injuries received by Elizabeth M. Bissett, alleged to have been caused by the negligence of the plaintiff in error. The

364    SUPREME COURT OF FLORIDA.

Pensacola Electric Co. v. Bissett *et al.*—Opinion of Court.

declarations in the two actions are practically identical, except as to the allegations of damages, the husband in the action brought by him as sole plaintiff seeking to recover for the loss of the society and services of his wife and for expenses incurred by him for medical attention, medicines, nursing, &c., resulting from the injuries inflicted upon his wife. No point is made on the pleadings, so there is no occasion to set them forth. Each declaration contains four counts, to which the defendant filed a plea of not guilty. Suffice it to say that it is alleged that the plaintiff, Elizabeth M. Bissett was a passenger upon one of the defendant's cars, the allegations or specifications as to the negligence of the defendant being, in the first count, "that the employees of said defendant did then and there run and operate said car in such a negligent, careless and reckless manner and at such high rate of speed," and that the motorman or brakeman in charge of defendant's car did "then and there operate and handle said machinery of said car in such a careless and negligent manner;" in the second count, "by reason of defective machinery which the defendant had used and had thereto attached for the purpose of manipulating and operating said car;" in the third, in "not providing safe appliances and cars for the plaintiff to be transported on;" and, in the fourth, "in the operation of its said car aforesaid and in failing to fit the same with proper and safe appliances and keep them in a reasonable condition of repair."

The two actions were tried together before a jury, but separate verdicts were rendered, the amount in the first action being for $7,663, with interest from the date of the institution thereof, and in the second action for $3,574, with like interest. In passing upon the motion for a new trial filed in each action, the court directed remittiturs, in the first action of $2,263, and in the second

of $353, and overruled the motions upon the entry of
such remittiturs. Relief is sought here from each judg-
ment, upon separate writs of error, though the two cases
are argued and submitted together, by agreement of coun-
sel, upon one bill of exceptions. Quite a number of errors
are assigned, including the one based upon the overruling
of the motion for a new trial, which contained thirty-four
grounds, but all of the assignments are not argued. We
shall consider such of those argued before us as we deem
necessary for a proper disposition of the two cases.

The first assignments argued are the 2nd and 25th,
which are treated together. We find that the defendant
had introduced as one of its expert witnesses Dr. Louis
DeM. Blocker, who, after testifying as to his qualifications
and experience as a physician, had testified at some
length as to having been called to examine and treat the
injured plaintiff, either the very day on which the accident
occurred or the next day, and the result of his examina-
tion, the condition in which he found her and the extent
of her injuries. We do not deem it necessary to set forth
his testimony in detail. It seems sufficient to say that he
identified a certain chart as being "a correct representa-
tion of the human frame and the nerves leading from it,"
which was offered and admitted in evidence, and had en-
tered into a full explanation thereof in order to enable
the jury to understand it as well as to comprehend his
testimony. It may also be well enough to say that testi-
mony had previously been adduced by the plaintiffs to the
effect that the accident was caused by the motor coming
up from underneath the trap-doors of the car on which
the injured plaintiff was a passenger and was seated with
her feet upon such trap-doors, by which such trap-doors
were thrown violently up against the feet of such plain-
tiff and the blows and concussion occasioned thereby
caused serious injuries to her, the nature of which had

been detailed by herself and several other witnesses, including the testimony of Dr. William S. King, by whom she was treated after her return to her home in Ashtabula, Ohio, some seven or eight weeks after the accident, as also the testimony of Dr. J. A. Dickson, also of such city, who had been called in consultation by Dr. King. These two physicians had testified as to having made an examination of such plaintiff, the condition in which they found her, the nature and extent of her injuries and had given their opinion as to the cause of plaintiff's condition. The testimony of each of these two physicians had been taken on commission and a number of cross-interrogatories had been propounded by the defendant to each. Prior to introducing Dr. Blocker, the defendant had placed Dr. F. G. Renshaw on the witness-stand and subsequently introduced Dr. Clarence Hutchinson. As is frequently, if not generally, the case, the expert physicians of the plaintiffs and the defendant did not agree in their testimony upon all points but in a number of respects were at variance with each other. Dr. Blocker had testified upon his direct examination that he did not see how such a blow upon the trap-door with the feet of the plaintiff in such a position as had been testified to could produce paralysis in the lower limbs. He further testified that "it could not produce a fracture or breaking of the lower of the coccyx." On cross-examination, counsel for the plaintiffs were proceeding to test his knowledge, skill and qualifications as a physician and medical expert and had asked him a number of questions along that line. He had just testified in response to some of such questions that "if a lean person should suddenly fall on the Coccyx on a hard substance, it would not be sufficient to produce paralysis in the lower limbs. The fracture of the Coccyx would not affect the nerves of the spinal cord. If you had a fall on the Coccyx the jar would be all along every-

where, if it has got violence enough to do it.   If you come down on a hard substance here in that manner with great force it would not produce paralysis without great injury to those bones.   In our medical works we learn of spinal concussion or spinal paralysis."   This question was then propounded to him by counsel for the plaintiffs:

"Suppose for instance, a person would fall in that way and a morbid growth was to cover these nerves here, if the jar had affected the nerves here, and a morbid growth had accumulated, around those nerves going off to the left wouldn't that produce paralysis of the legs?"

. The bill of exceptions then discloses the following proceedings: "And the defendant did then and there object to said hypothetical question because it is not based upon the evidence.   But the court did then and there overrule said objection and permitted said question to be answered, pronouncing its opinion as follows: 'I think the question is relevant in view of other testimony.'   To which ruling and decision the defendant did then and there except.   The witness answered said question as follows: A. Yes it would produce paralysis to the back part of the leg.   It would not affect the whole leg.   The injury would not be very extensive.   There is such a thing as partial paralysis, that is, there could be paralysis of the part of the body if the injury was to that part.   The spine could be affected without any outside showing at all.   It could be affected without my detecting it in the examination I made.   I remember writing out for Mr. Davis (plaintiff's attorney) a statement of the examination made by myself and Dr. Renshaw.   Question by plaintiff's attorney, 'Did you or not in that statement state that you had found a tumor and cancerous growth?'   Answer. 'That is what I·described as the indurated prolapsed womb or tumor mass as I described it, Yes sir.'   If that mass had been a natural growth it would not have disappeared as it has in

this manner. I don't see how that condition that I found could have been produced by an injury. Disease would bring it about. A diseased condition."

The ruling of the trial court overruling the objection and permitting the question to be answered forms the basis for the two assignments now under consideration. We held in Baker v. State, 30 Fla. 41, 11 South. Rep. 492, that "Whereas an expert may not be interrogated upon an hypothesis having no foundation in the evidence, it is yet not necessary that the hypothetical case put to him should be an exact reproduction of the evidence, or an accurate presentation of what has been proved. Counsel may present a hypothetical case in accordance with any reasonable theory of the effect of the evidence, and if the jury find that the facts on which his hypothesis or theory of the effect of the evidence is based are not proved, the answer of the expert necessarily falls with the hypothesis." We approved and followed this holding in Williams v. State, 45 Fla. 128, 34 South. Rep. 279. We also held in the last cited case that "an expert witness who has given an opinion upon a question submitted to him may be further examined as to the reasons for his opinion." It should be borne in mind that the question so objected to was propounded on cross-examination of the witness. In West Pratt Coal Co. v. Andrews, 150 Ala. 368, 43 South. Rep. 348, the court held that "Where an expert testified for defendant in an action for injuries to a servant, it was within the discretion of the court to widen the range of cross-examination, even to include matters not pertinent to the issues, to test the witness' means of knowledge, memory, accuracy, or credibility." The same court held that "Expert witnesses may be cross-examined on purely imaginary and abstract ques-tions, in order to get their opinions on all the possible theories of the case, and in order to test the value and

accuracy of their opinions." Parrish v. State, 139 Ala. 16, 36 South. Rep. 1012. Also see Birmingham Ry. & Electric Co. v. Ellard, 135 Ala. 433, 33 South. Rep. 276; West Chicago Street Ry. Co. v. Fishman, 169 Ill. 196, 48 N. E. Rep. 447; Taylor v. Star Coal Co., 110 Iowa 40, 81 N. W. Rep. 249; 1 Wigmore on Evidence, Paragraph 684, and authorities cited in note. It is not necessary for us to go as far as some of the cited authorities, nor do we wish to be understood as so doing, but we are clear that no error was committed in overruling the objection to the question propounded in the instant case. We have examined Nichols v. Oregon Short Line R. Co., 25 Utah 240, 70 Pac. Rep. 996, cited to us by the plaintiff in error, as well as the authorities referred to therein, but, after doing so, are still of the opinion that the two assignments under consideration have not been sustained.

The next assignments presented to us for consideration are those numbered from 3 to 10 inclusive and the one numbered 12, which counsel for plaintiff in error say may be considered together, though they "insist that there is error in each." These assignments are all based upon certain portions of the charge given by the court of its own motion. It is settled law in this court that where an instruction, so far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if subsequent instructions are given containing the required qualifications or exceptions. It is not required that a single instruction should contain all the law relating to the particular subject treated therein. In determining the correctness of charges and instructions, they should be considered as a whole, and, if as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be mis-

24—Vol. 59.

leading, must fail. In passing upon a single instruction or charge it should be considered in connection with all the other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. In determining the correctness of charges and instructions they should be considered as a whole, but where a special charge or instruction in itself announces a patently erroneous proposition of law, it must affirmatively and clearly appear that the presumptive harm caused thereby has been entirely removed, or the judgment should be reversed. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities there cited; Davis v. State, 54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Cross v. Aby, 55 Fla. 311, 45 South. Rep. 820; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Stearns & Culver Lumber Co. v. Adams, 55 Fla. 394, 46 South. Rep. 156; Johnson v. State, 55 Fla. 41, 46 South. Rep. 174; Atlantic Coast Line R. Co. v. Dees, 56 Fla. 127, 48 South. Rep. 28. Applying these principles to the assignments under consideration, we are of the opinion that no reversible error has been made to appear to us. We see no useful purpose to be accomplished by copying either the assignments or the portions of the charge upon which they are based. If we did this, in order to make this opinion intelligible, we would have to copy other portions of the charge, as well as some of the instructions given. In support of its contention, the plaintiff in error cites Southern R. Co. v. Thompson, 129 Ga. 367, 58 S. E. Rep. 1044; and Central of Ga. R. Co. v. Weathers, 120

Ga. 475, 47 S. E. Rep. 956, each of which we have examined and are of the opinion that they do not sustain the contention as made, but, whether so or not, the assignments for the reasons stated must fail. We have noted that special stress has been laid by the plaintiff in error upon the 12th assignment, which is recurred to after the argument of the 11th assignment. We shall likewise pursue this course. The 11th assignment is based upon the following portion of the charge:

"In this case, the court charges you that if you find that the plaintiff, Elizabeth M. Bissett, was injured, on or about the 16th day of February of last year, in this county, while riding on a car of the defendant company; that the injury was occasioned by the breaking loose of the motor under the car, by means of which it forced up a trap-door against the plaintiff's feet, causing her physical injury,—if the plaintiff has made it appear by a preponderance of testimony that that accident occurred, that that was the way it occurred, then the presumption arises that the defendant company was negligent, and the plaintiff would be entitled to recover damages on such showing."

It is contended that this error is well assigned for the reason that such portion of the charge is too broad in that the jury were told that the "presumption arises that the defendant company was negligent and the plaintiff would be entitled to recover damages on such showing," that is the presumption was not confined to the particular matters charged as negligence in the declaration. There would be force in such argument, if the portion of the charge complained of stood alone, but, unfortunately for the contention of the plaintiff in error, in the preceding portions of the charge the court had fully and properly defined the presumption of negligence cast upon the defendant company by our statute, and to make assurance

doubly sure that the jury could not be misled upon this point later on gave several instructions bearing thereon, at defendant's request. We would refer particularly to defendant's instructions numbered 1, 9 and 11. We copy such eleventh instruction, which is as follows:

"The plaintiffs cannot recover against the defendant unless you believe from the evidence that Mrs. Bissett was injured by the negligence of the defendant or its agents in the manner alleged in the declaration. If she was injured in any other manner or from any other cause than from those set out in the declaration plaintiff cannot recover."

If the charge of the court was not sufficiently full and explicit upon the points questioned, then such defect, error or omission therein was fully cured and supplied by these instructions, given at the defendant's own asking. In requesting additional instructions, the defendant was but following the course pointed out in the two Georgia cases cited *supra*. As was said in Southern Ry. Co. v. Thompson, *supra*, "In the absence of a request for more specific instructions on this subject, the charge in general terms as to a presumption of negligence arising from proof of damages by fire from the engine, taken in connection with the entire charge, would not require a new trial." To the same effect is Central of Ga. Ry. Co. v. Weathers, *supra*, and Central of Ga. Ry. Co. v. Bagley, 121 Ga. 781, 49 S. E. Rep. 780. If the defendant desired still more specific instructions, it should have asked for them. Under the authorities previously cited, this assignment must fail.

We return now for the moment to a further consideration of the 12th assignment, which is based upon the following portion of the charge of the court:

"But, if the defendant company by evidence has made it appear to your satisfaction that in and about the con-

struction and operation of the car in which the plaintiff
was riding they exercised all due and reasonable care and
diligence, they by that evidence have discharged them-
selves from liability and plaintiff would not be entitled
to recover without some other evidence showing negli-
gence on the part of the defendant."

This portion of the charge immediately follows that
portion thereof upon which the 11th assignment was
predicated, which we have copied above, and should be
read in connection therewith. It is earnestly urged be-
fore us that error was committed by the court in using
the words, "to your satisfaction," thereby imposing a
greater burden upon the defendant than under the law
it was called upon or requested to bear.   Technically,
this is probably true, but the defendant admits in its
brief that in subsequent instructions, given at its request,
the court "announced a contrary rule."   Complaint is
made, however, that "the jury was nowhere told which
rule to follow," and it is insisted that "the giving of con-
tradictory instructions is in itself error and ground for
reversal."

It must be conceded that the selection of the words,
"to your satisfaction," to say the least of it, was unfor-
tunate.   While the authorities are somewhat divided as
to the meaning of and the proper construction to be
placed upon the words, "satisfy" and "satisfaction," when
used in charges and instructions, this court has rather
clearly defined its position.   See Murphy v. State, 31.
Fla. 166, 12 South. Rep. 453; Hubbard v. State, 37 Fla.
156, 20 South. Rep. 235; Galloway v. State, 47 Fla. 32,
36 South. Rep. 168, all cited to us by the plaintiff in
error, as is also the cases of Torrey v. Burney, 113 Ala.
496, 21 South. Rep. 348, and Foley v. State, 11 Wyo. 464,
72 Pac. Rep. 627, all of which we have examined, as well
as the authorities cited by the defendant in error, but

which we do not deem it necessary to cite. A number of authorities bearing thereon will also be found in 7 Words & Phrases 6332. We do not feel called upon to enter into any discussion of the matter. It may also be conceded that the contention of the plaintiff in error as to the law governing the giving of contradictory instructions is correct, and is sustained by the cited authorities. Lane v. State, 44 Fla. 105, 32 South. Rep. 896; Cleveland, C. C. & St. L. Ry. Co. v. Best, 169 Ill. 301, 48 N. E. Rep. 684; Hughes' Instructions to Juries, section 247 and authorities collected in notes. We would also call attention to the holding in Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, especially the 29th headnote, which we copied above, in discussing assignments from 3 to 10. But, conceding so much, we are of the opinion that no reversible error has been made to appear. We do not think that the instructions given upon this point can fairly be said to be contradictory. It seems to us that the instructions given at the request of the defendant could more appropriately be said to be explanatory of the charge of the court. Be this as it may, viewing all the charges and instructions, which were given upon this point, together, in connection with the testimony, all of which is incorporated in the bill of exceptions, we do not see how the jury could have been misled by the words used, of which complaint is made. On the contrary, we think it affirmatively and clearly appears that the presumptive harm caused thereby, if such existed, was entirely removed, and that no prejudice to the defendant's rights could have resulted therefrom. See the discussion and authorities cited in Cross v. Aby, 55 Fla. 311, text 323, 45 South. Rep. 820, text 824. We would also refer to Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922, from which the instant case is clearly distinguished, in that in it we have

all the evidence adduced as well as all the charges and instructions given. Still the discussion and authorities collected in that case throw light upon the point we are now considering in this case. As we have already said, this assignment has not been sustained.

Assignments 14 to 19 inclusive are all based upon portions of the general charge of the court relating to the measure of damages. We think it well to copy in full all that part of the charge bearing upon this point, which is as follows:

"If the plaintiffs are entitled to recover, that is, if the plaintiff Elizabeth M. Bissett and her husband are entitled to recover, then the plaintiff Richard M. Bissett is entitled to recover, provided he has shown as a result of the accident he has paid out or obligated himself to pay out any moneys for nurse hire, physicians' bills, drug bills and hospital dues, and provided that the result of the accident he has lost wholly or in part the society of his wife as a wife. If you find that the plaintiffs in either or both suits are entitled to recover, in estimating the damages recoverable you can take into consideration anything in the case bearing upon the injuries, suffered, if plaintiff so suffered, its nature and character, and amount of physical pain suffered in consequence of it; the length of time that physical pain has been suffered in the past since the date of the accident, if the accident occurred, or will be suffered in the future, if any; also the earning capacity of the plaintiff Elizabeth M. Bissett, if any has been shown by the testimony; the extent, if any, that the earning capacity has been diminished as a result of the injuries suffered, if any injuries were suffered. The two elements, that is, the loss of earning capacity and the amount of physical pain and suffering endured by her as a result of the injury, you will reduce to a money value, and allow as damages in the suit of Elizabeth M. Bissett,

and her husband against the defendant company. In estimating the amount to be allowed for physical pain suffered or to be suffered, the jury should exercise reasonable discretion, the law leaving that element of damage to be estimated from the testimony by the exercise of ordinary and reasonable judgment. If you find that the plaintiff Richard Bissett is entitled to recover damages, then in allowing damages you will take into consideration the amount of money, if any, which he has paid or obligated himself to pay by reason of the injury to his wife, if any injury occurred, for physicians' services, nurse hire, hospital dues, medicines, and in addition to that you will allow such sums as appears to be right and proper in your judgment, under the evidence, for any loss which he has suffered as a result of the accident in the way of being deprived of the society of his wife as a wife, and in estimating that element of damages the jury will exercise reasonable discretion in fixing the amount. If you find for the plaintiff or plaintiffs in either or both of these cases, the form of your verdict will be in each case where you find such a verdict, after entitling the case at the top, We, the jury, find for the plaintiff or plaintiffs, whichever suit it is, and assess the damages at so much, naming the figure, with interest from date of bringing suit, the date can afterwards be ascertained from the records, and one of your number will sign such a verdict or verdicts as foreman. You cannot find in either case in excess of what we call the ad damnum clause in the declaration. That clause in the suit of Elizabeth M. Bissett and husband, is laid at ten thousand dollars, and in the suit of Richard Bissett is laid at five thousand dollars."

Assignments 20, 21 and 22 are all based upon instructions given at the request of the plaintiffs, which also relate to the measure of damages and are as follows:

"Charges requested by the plaintiff and given by the Court:

1. The Court charges you that in assessing damages, if you find under the charge and the evidence that the plaintiffs are entitled to recover, that in the suit by the husband you may take into consideration in arriving at the damages so suffered, if any were suffered, the expenses such as physicians' fees, nurse hire, medicine; and also the loss of the society of his wife, both prior to this trial and in the future, provided you find from the evidence that the injuries are of such a nature that he has been or will be deprived of her society.

To the giving of which said charge No. 1, the defendant did then and there except.

2. In the action by the husband and wife, for injuries to the wife if you find under the charge of the court and the evidence that they are entitled to recover, you may take into consideration in assessing the damages the physical pain and suffering attendant upon the injury, if any; the loss or diminution of earning power, if any, and if you find that such injuries are permanent, or that she will continue to suffer therefrom, you may take into consideration her future sufferings as well as her past and also the future diminution or loss of her earning power, if any. If you find from the evidence that her injuries are permanent then in estimating the damage that she is entitled to recover you may consider the mortality tables introduced in evidence and all other evidence bearing on the subject in estimating the amount, if any, she is entitled to recover as a result of being incapacitated from working if you find that she is or will be so incapacitated.

To the giving of said charge No. 2, the defendant did then and there except.

3. The court charges you that if you should find from the evidence that the physical condition of Mrs. Elizabeth

M. Bissett, at the time of the accident was of such a nature as to aggravate the injury, the plaintiff's previous infirmity will not excuse the defendant from answering in damages to the full extent of the injury suffered, provided, of course, the negligence of the defendant was the proximate cause of such injury.

To the giving of which charge No. 3, the defendant did then and there except."

It may well be true that, if some of the paragraphs or portions of the charge or instructions given stood alone or isolated, the assignments predicated thereon would be well assigned; but, construing together the entire charge and constructions bearing upon the subject, as we must do under prior decisions of this court, previously cited in this opinion, we are of the opinion that the plaintiff in error has failed to make any reversible error appear. It may also be further true that, in the limited time at his disposal during the trial of the case, with the pressure of many duties upon him, and the confusion necessarily engendered thereby, in the midst of which the Circuit Judge had to prepare his charge, he may not have used sufficiently guarded language. He may not have been always happy in his choice of words. If we reach the conclusion, after an examination thereof, that the legal principles enunciated therein are substantially correct, that is all that could be reasonably expected or required. The fact that we might have clothed such principles in different verbiage, or that we may not altogether approve of the language in which they were couched by the Circuit Judge, furnishes in itself no ground for a reversal of the judgment. We have at our disposal whatever amount of time may be desired, or at least required, for research, for an examination of the authorities and for weighing and comparing them, before reaching and announcing our conclusion. Of such privi-

lege and opportunity a *nisi prius* judge is necessarily largely deprived. If we can see and should reach the conclusion that substantial justice has been done, we must decline to reverse the judgments, even though we should find that technical error had been committed. As was said in McKay v. Lane, 5 Fla. 268, text 276: "This court has uniformly proceeded upon the practice not to reverse a judgment, however erroneously an isolated point may have been ruled by the judge below, when it is clearly apparent that the party complaining had been in no way injured by the improper ruling." We would also refer to the other decisions of this court upon that point collected in Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922, text 929. Upon these assignments, as the others, we have examined all the authorities cited by counsel for the respective parties and we listened with attention to their oral arguments. This opinion has already been extended to a greater length than is desirable and yet other assignments still remain to be treated. We cannot be expected to treat in detail every assignment presented, therefore we must content ourselves with announcing that as a result of our examination and investigation we have reached the conclusion that these assignments have not been sustained. See Dime Savings Institution v. Allentown Bank, 65 Pa. St. 116, text 123. We must decline even to set forth the different authorities cited, as, in view of the manner in which we have disposed of them, we see no useful purpose to be accomplished by so doing. Since the plaintiff in error insists so earnestly that the charge was faulty in not clearly informing the jury that in estimating the prospective losses in the future such future damages should be reduced to their present value, and relies, in support of such contention, upon Florida East Coast Ry Co. v. Lassiter, 58 Fla. 234, 50 South. Rep. 428, we will add that we fully approve

of the principle enunciated upon that point in the cited case. It would have been safer and better practice for the trial judge to have inserted the word "present" before the words "money value," in that portion of his charge dealing with such point, but, as we are of the opinion that it is readily apparent from the charge as an entirety that present money value was meant, we do not see how the jury could well have been misled by such omission, and we must decline to reverse the judgment therefor, for the reasons already given and under the authorities previously cited. If the defendant had desired a more explicit instruction upon such point, it should have prepared and submitted it for consideration to the trial judge. We find as a matter of fact that the defendant did request fifteen special instructions, all of which were given, except the one numbered four, the refusal of which forms the basis for the 23rd assignment, but which is not urged before us. Even so, the court had already given the substance of such refused instruction, in so far as it embodied correct principles of law, in the third requested instruction of the plaintiffs, which we have copied above and upon which error was also assigned, which assignment is earnestly insisted upon. All that we deem it necessary to say concerning it is that such instruction finds full support, in our opinion, in the case of Atlantic Coast Line R. Co. v. Dees, 56 Fla. 127, 48 South. Rep. 28, and we fully approve of the principles enunciated therein.

We have now reached the last assignment urged before us, which is based upon the overruling of the motion for a new trial. As we have previously said, this motion contains thirty-four grounds, a number of which are earnestly insisted upon. Some of the grounds have already been disposed of in discussing other assignments. We shall not undertake to treat the remaining grounds which are argued seriatim, but shall discuss such of them as seem

to merit consideration. Even this we must do briefly and in rather a general way. The defendant strenuously argues that the evidence adduced is not sufficient to support the verdict, its first contention being that "the evidence shows clearly that the cause of the injury was not a defective car or brake or negligent motorman, but the unexpected rising of the motor caused by the breaking of the king bolt, which held it in place." We decline to set forth the evidence upon this point or even to attempt a summary thereof, as to do so would still further extend this opinion, and it may well be doubted if any useful purpose would be subserved thereby. As is generally true in cases of this character, there is more or less conflict in the testimony of the different witnesses for the parties litigant, but it clearly establishes that Mrs. Bissett was a passenger on one of the cars of the defendant, which was propelled by electricity, on or about the date alleged, that the king bolt which held the motor in place was either broken or out of place, by means of which the trapdoor, upon which such plaintiff's feet were resting, was suddenly and violently forced up and driven against her feet, by reason of which certain injuries were inflicted upon her. Witnesses differ as to the speed of the car, their estimates ranging from four to fifty miles per hour. It further appears that as the car approached a curve the motorman undertook to decrease the speed, whatever the rate may have been, and that some of the machinery or appliances did not work properly. At least there is evidence to this effect, or such circumstances testified to as existing from which the jury might have reached such conclusion as we have stated above. At any rate, an accident occurred to such plaintiff while a passenger upon defendant's car and certain injuries were inflicted upon her. There is no gainsaying that these two matters were established beyond contradiction. The statute, which has

often been construed by this court, creates the presumption that a person injured by the operation of a railroad was thus injured through the negligence of such road, and casts upon the railroad company the burden of showing that its agents have exercised all ordinary and reasonable care and diligence. See Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities there cited; Seaboard Air Line Ry v. Thompson, 57 Fla. 155, 48 South. Rep. 750. It was primarily for the jury to determine, under appropriate instructions from the trial court, whether or not the defendant company had met this burden and relieved itself of such burden so cast upon it by the statute. By the verdict returned the jury found against the defendant upon the question of negligence, and we are not prepared to say, after a careful examination of all the evidence adduced, that as reasonable men the jurors could not have found such verdict. The next contention of the defendant is that, even if we should hold that the evidence warranted or justified the jury in finding the defendant negligent, the amounts given the respective plaintiffs are grossly excessive and for that reason the two judgments should be reversed. The counsel for the defendant state that they "hope to be able to demonstrate to the court that Mrs. Bissett is what medical men term a malingerer—that is one who is simulating serious injury in order to recover damages." Upon the nature, character and extent of the injuries inflicted, as upon the question of negligence, the testimony of the respective witnesses for the plaintiffs and the defendant is more or less conflicting. Especially do the two Ashtabula and the three Pensacola physicians differ upon this point. It would seem that the three Pensacola physicians were not in entire accord themselves with each other in their testimony and in the opinion that they expressed as medical experts. Be that as it may, they were residents of the City

of Pensacola, went on the witness-stand and gave their testimony in person before the jury, while the two physicians of the plaintiffs reside in Ashtabula, Ohio, and gave their testimony by deposition, and yet the jury would seem to have given more credence to the testimony of the two absent medical experts. This was a matter within their province. Years ago, Alexander Pope propounded the question "Who shall decide where Doctors disagree?" If they happen to disagree in giving testimony in litigated cases, the law imposes upon the jury the duty of deciding. We think that this is a wise and salutary provision of the law for a number of reasons, some of which have been cogently set forth by Mr. Justice Cobb, in Kelly v. Strouse, 116 Ga. 872, text 888, 43 S. E. Rep. 280, which language we quoted with approval in Atlantic Coast Line R. Co. v. Beazley 54 Fla. 311, text 423, 45 South. Rep. 761, text 797. Also see there our discussion of the matter and the authorities cited. It is exceedingly difficult to get at the facts upon any controverted question over them. Dr. Johnson is reported to have said, "The hardest thing in the world, sir, is to get possession of a fact." If Judge Lacombe's definition in Huber v. Guggenheim, 89 Fed. Rep. 598, text 601 that "a fact is something fixed, unchangeable," be taken as correct, to which we are not prepared to agree then the difficulty would be enormously increased. Even, if we should be so fortunate as "to get possession of a fact," how would we know that we had it in our grasp? Where could we find an infallible test for determining it? As Professor James has well said, "To *know* is one thing, and to know for certain *that* we know is another." Controverted questions will find their way into the courts and they have to be determined. Absolute certitude may, indeed, be unattainable, and the law does not require impossibilities, so certain rules of evidence have been formulated and adopted for getting at facts, and

litigated questions of fact have to be decided "on the best evidence obtainable for the moment," under those rules. In common law courts this delicate and responsible task of arriving at the facts has been confided to juries. And when a jury has rendered its decision through its verdict, it should be regarded as settling all controverted questions of fact submitted for determination, unless it clearly appears that the jurors in arriving at such verdict must have been improperly influenced by considerations outside the evidence. So the trial judge is given a supervisory power over the verdicts and the right to set aside and grant a new trial. In the two cases under consideration the trial judge, in passing upon the motions for a new trial, did exercise that supervisory power, being of the opinion that the damages allowed were excessive, and directed the filing of remittiturs, as has already been stated, but upon other points he refused to interfere with the verdicts. The same motions for a new trial are now argued before us upon an assignment of error. While we have the power to reverse the judgments upon the grounds, or some of them, stated in such motions, it is a power that should be cautiously and sparingly exercised. There was testimony to the effect that Mrs. Bissett's injuries were traumatic as to cause and permanent in their nature. Now, we do not feel called upon to enter upon an extended investigation of traumatic neuroses, even if we felt competent so to do. Suffice it to say that such difference of opinion prevails about them in the medical world that no one can afford to be dogmatic in discussing them. They have been a fruitful source of litigation in our courts and, perhaps, have not always received the consideration merited by their peculiar nature and far-reaching consequences. Much light has been thrown upon them, within recent years, by the researches and investigations of expert physiologists, psychologists and psychiatrists, and the

writer of this opinion has found the questions discussed and results reached by them interesting and profitable. As to the question as to whether or not the injured plaintiff was a malingerer, that was peculiarly a matter for the jury to determine. She was personally present and testified at the trial. Evidently the jury did not consider that she was "simulating serious injury in order to recover damages," and, so it would seem, neither did the trial judge, since he refused to grant the motions for a new trial. It is obvious that the jury and the trial judge were in a far better position to pass upon this matter than we could possibly be. As to the amounts of damages being excessive the trial judge has exercised his judicial discretion in causing them to be reduced to what he conceived to be right and proper. We do not feel justified in going any further than he did. See our discussion upon this point in Atlantic Coast Line R. Co. v. Beazley, *supra.* We would also refer to Morgan v. Southern Pac. Co., 95 Cal. 501, 30 Pac. Rep. 601, as being an especially instructive case. As to this assignment generally, questioning the sufficiency of the evidence to sustain the verdict, see the guiding principles laid down by us in Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44. We would also refer to Southern Home Insurance Co. v. Putnal, 57 Fla. 199, 49 South Rep. 922, text 929; Phoenix Ins. Co. v. Bryan, 58 Fla. 341, 50 South. Rep. 576; Atlantic Coast Line R. Co. v. Partridge, 58 Fla. 153, 50 South. Rep. 634; Williams v. State, 58 Fla. 138, 50 South. Rep. 749; Bexley and Osteen v. State, decided here at the present term. Having failed to discover any reversible error the two judgments must be affirmed.

All concur, except TAYLOR, J., absent on account of illness.

PARKHILL, J.

Upon a due consideration of the matters called to our attention by the petition for a rehearing herein I believe that the court has made a mistake in its decision, and should endeavor to correct the same by granting the said petition herein for the following reasons, to-wit:

The court erred in giving the first instruction requested by the plaintiff, as follows:

1. "The court charges you that in assessing damages if you find under the charge and the evidence that the plaintiffs are entitled to recover, that in the suit by the husband you may take into consideration in arriving at the damages so suffered, if any were so suffered, the expenses such as physicians' fees, nurse hire, medicine, and also the loss of the society of his wife, both prior to the trial and in the future, provided you find from the evidence that the injuries are of such a nature that he has been or will be deprived of her society."

The plaintiff in error asks for a rehearing "because in the instruction to allow, and in the verdict allowing, damages for future loss of society to the husband, without any evidence to show his age or life expectancy, is erroneous—a matter that was overlooked by the court and not considered." The proof was fatally deficient in not giving the age of the plaintiff husband.

The element of future loss by the husband of the society of his wife must be based upon the joint lives of the wife and the husband. Florida Cent. & P. C. Co. v. Foxworth, 41 Fla. 1, 25 South. Rep. 338. This element of damage must depend upon the probable length of time the husband and wife would probably live together, for unless they lived together there would be no society.

The onus is upon the plaintiff to establish the amount of damage which he is entitled to recover, and one element

of such proof is the number of years the husband would probably have lived with his wife. If there is no proof on this point, the plaintiff has failed to make out a case, and the verdict should be for the defendant. On this question, the verdict is contrary to law, and without sufficient evidence to support it; and this, without more, would necessitate the grant of a new trial.

There was evidence that the wife's life expectancy was about twenty years. There was no evidence of the age or the life expectancy of the husband plaintiff, and he was not a witness before the jury. He may have been much older than his wife, and his expectancy of life might have been only one year. In such a case the jury would render a verdict for the value of the future loss of the society of the plaintiff's wife for one year. In the instant case, the jury was permitted to figure on the future loss of the plaintiff of the society of his wife based upon an expectancy of life of twenty years. This was manifestly harmful to the plaintiff.

II. The court erred in charging as follows: The two elements, that is, the loss of earning capacity and the amount of physical pain and suffering endured by her as a result of the injury, you will reduce to a money value, and allow as damages in the suit of Elizabeth M. Bissett and her husband, against the defendant company," in that the court charged the jury to reduce the two elements of damage to a money value and allow as damages, instead of telling the jury to reduce the two elements of damage to a money value and its present worth to be given as damages. Florida Cent. & P. R. Co. v. Foxworth, 41 Fla., 1, 25 South. Rep. 338. In the Duval-Hunt case, 34 Fla., 85, 15 South. Rep. 876 we held that where the suit was brought by dependents their recovery was limited to an amount equal to the present worth of a future support for plaintiff, estimated upon the basis therein mentioned.

There is pointed out by this court a great difference between the money value of elements of damage and the present worth thereof that might ordinarily be overlooked by a court as well as a jury, and it seems we have overlooked this difference here. If there is no difference between reducing the elements of damage to its money value and awarding that, or reducing the elements of damage to its money value and awarding its present worth, if the one is the equivalent of the other, or includes the other, then the jury was not misled by the court's statement of the rule. But reducing or turning the elements of damage into dollars and cents or the money value thereof and giving that as damages is very different from converting these elements into money value and awarding its present worth.

In Goodhart v. Pennsylvania R. Co., 177 Pa. St. 1, text 17, 35 Atl. Rep. 191, the court said: "When future payments are to be anticipated and capitalized in a verdict, the plaintiff is entitled only to their present worth." See, also, Fulsome v. Concord, 46 Vt. 135.

In Nelson v. Lake Shore & M. S. Ry Co., 104 Mich. 582, 62 N. W. Rep. 993, the court approved the following rule or method of finding the present worth of a sum of money payable in the future: "The present valuation of a sum of money payable in the future is what that sum is worth if paid presently—paid now. For example the present value of $1.00 at 6% at the end of one year is found by dividing $1.00 by $1.06, and the present value $1.00 at the end of two years is found by dividing $1.00 by $1.12."

I believe we will make a mistake to establish the rule here as to these instructions that if the defendant had desired more explicit instructions upon these points it should have prepared and submitted them for consideration of the trial judge.

It may be that if an instruction is correct as far as it

goes, but is not full enough, the party desiring it to be made full should request an instruction in the form desired, and will not be heard to assign error unless this is done. But it is well settled that the giving of an erroneous instruction is error, whether any requests to charge were made or not. Blatchfield's Instructions to Juries, Paragraph 133, and cases cited. Our reports are full of cases reversed because of erroneous instruction where a correct instruction was not asked for by the court. An erroneous instruction on murder has been held to be reversible error in the absence of a correct charge on the point. And so in many cases. The instruction about reducing the elements of damage to a money value was an erroneous instruction and constituted reversible error.

If it be said that the instruction as to the jury allowing damages for future loss of the wife's society is not erroneous but merely did not go as far as it should have done in limiting the damages to the life expectancy of the husband and the wife, yet the instruction was an erroneous one *in submitting the question* of future damages for loss of the wife's society at all *where there was no evidence* as to the life expectancy of the husband, and if this *instruction* may be passed over as not reversible error, *the verdict* is fatally defective in the absence of proof of the life expectancy of the husband.

I think the defendant should have a rehearing in these cases.

I concur in the above opinion of Mr. Justice PARKHILL.

W. A. HOCKER.

Petition for rehearing in this case denied.